KNOWLTON VS. WALKER.

A deed of land contained a proviso that if the grantee should fail to pay a certain sum of money according to the conditions of a bond executed at the same time by the grantee to the grantor, then the conveyance and the estate created thereby should cease, and be of no effect, and the grantor or his legal representatives should have the right to re-enter into the premises, and sell and convey the same to any other person, and retain all moneys paid thereon without recourse either in law or equity. *Held*, that the grantor had the rights of a mortgagee in the land, and the grantee, those of a mortgagor.

Upon default in payment of the money secured by such bond, the grantee in the deed had an equity of redemption, which the grantor might foreclose in the usual manner; and if he found the premises vacant, the grantor might enter with the rights of a mortgagee in possession.

*Rogan vs. Walker*, 1 Wis., 527, as to these points, approved.

Such a conveyance should be recorded as a deed, and not as a mortgage, in order to protect the rights of the grantee therein.

No form of words in the instrument, if it was designed to be a security for a loan of money, will prevent a court of equity from granting relief, nor will any lapse of time, short of the period of limitation fixed by law, affect the right of redemption.

A bill to redeem is not demurrable because it alleges that the bond secured by the mortgage was usurious, and prays to be relieved from it according to the usual course of equity in such cases.

The statute of limitations does not begin to run against the owner of an equity of redemption, until the mortgagee takes actual, open and notorious possession of the mortgaged premises. If, after he has done so, the mortgagor permits him to remain thus in possession for ten years, without proceeding to redeem or requiring an account of the rents and profits, his right of action is barred, but not till then.

June Term, 1860.

KNOWLTON
v.
WALKER.

APPEAL from the Circuit Court for *Dane* County.

*Knowlton* filed his bill, August 31, 1855, in the circuit court for Rock county, against *Walker, Baker, Leake, Smith, Story* and *Hicks*, to redeem certain lands situate in that county. The complainant claimed title through several mesne conveyances from one Belding; and the written instruments which are relied upon in the bill, and referred to in the opinion of the court, as creating the relation of mortgagor and mortgagee between *Walker* and *Baker* on the one side and Belding on the other, are in substance as follows: 1. A bond executed by Belding to *Walker* and *Baker*, in the penal sum of $1200, dated February 20th, 1839, with a condition that if Belding should pay to the obligees, on the 18th of February, 1843, the sum of $600, and in each year the sum of $42 as interest thereon, and would pay all taxes that might be legally imposed upon the premises that day conveyed by said *Walker* and *Baker* to said Belding, the bond should be void. 2. A deed from *Walker* to Belding, executed on the same day as the bond, by which it was recited that said *Walker*, in consideration of " the conditions of a certain bond thereinafter named," and of one dollar, had bargained and sold, and did thereby bargain and sell to said Belding, his heirs and assigns, the land in controversy, " provided always, anything herein contained to the contrary notwithstanding, that if the said Henry Belding shall fail to comply with the conditions, or any part thereof, of a certain bond bearing even date with this indenture and hereinafter described, then the said conveyance, and the estate therein created, shall cease, determine and be of no effect, and the said party of the first part shall have the right to re-enter and take possession of the said premises, and to sell and convey the same to any

other person, and to keep and retain all moneys paid thereon, without recourse either in law or equity ; which bond is in the words and figures following:" [here the bond was recited at length.] This deed was duly acknowledged and recorded in the record of deeds of Rock county, January 22d, 1846. There were other allegations in the bill, designed to show that the transaction between *Walker* and *Baker* and Belding was really a loan of money from the former to the latter, and that the land was purchased by *Walker*, at the U. S. public land sales, with the money so lent, and the title taken by *Walker* as security for its repayment ; but this portion of the bill is sufficiently stated in the opinion of the court. The bill also alleged that the amount of money advanced or loaned by *Walker* and *Baker* for the purchase of the land was only $300, and that the agreement that Belding should pay to them double that sum with seven per cent. interest, was usurious, and void except as to the $300, with seven per cent. interest thereon. The bill also alleges that the complainant " is and always has been ready and willing to pay the said *Walker* all such sums of money as he is legally and equitably entitled to have and receive upon the said bond and his equitable mortgage, and hereby offers to pay the same when, where and how the court shall direct, and to bring the same into court in redemption of said real estate," &c. ; that he has frequently applied to said *Walker* " to settle and adjust the said matter in relation to said bond and equitable mortgage, and receive such sum as should be due him thereon ; " but that *Walker* has refused to do so, and denied that the complainant had any right or title in the premises. The bill also states that *Walker*, in June, 1854, conveyed a part of the premises to the defendant *Leake* (who had gone into possession), and had entered into certain contracts for the sale of the residue, under which the other defendants had gone into possession, and claimed some interest in the land. Other allegations of the bill are stated in the opinion of the court. The prayer was, among other things, that the amount due to *Walker* and *Baker* on the bond might be declared by the court; that the complainant might be permitted to redeem the land by the payment of

that amount; that the defendants be decreed to deliver up possession of the land to the complainant; and for general relief.

*Leake, Hicks* and *Story* filed answers to the bill, and the defendant *Walker* demurred to it for want of equity, and because the bill stated the existence of a trust not cognizable by the courts of common law, and the cause of action accrued more than ten years before the filing of the bill; and because the bill was in other respects insufficient.

On the 3d of February, 1858, the complainant not appearing to prosecute his suit, the bill was, for that cause, dismissed. On the 26th of November, 1858, upon motion, notice of which was served on the defendants, and upon an affidavit made by an attorney of the plaintiff, the court set aside the order dismissing the bill, and re-instated the action. Subsequently the venue was changed to the circuit court for Dane county, where the demurrer of *Walker* was overruled, and he appealed.

*H. K. Whiton,* for appellant:

This is not a suit to redeem from a mortgage after condition broken. *Rogan vs. Walker*, 1 Wis., 553, 595. The conditions in *Walker's* deed to Belding were conditions subsequent; and on failure to perform them the fee re-vested in the grantor, but a court of equity, upon a consideration of all the equities, *may* relieve from the forfeiture. But the court will not grant such relief unless the vendor can, by the payment of interest, be put in as good condition as he would have been in had the buyer made his payments at the times stipulated. And if the vendor, having a right to do so, re-enters and re-sells the premises to a third party who goes into possession, it is too late for the party in default to obtain the aid of a court of equity. 2 Story's Eq. Jur., § 1314; 3 Barb. (S. C.), 460. 2. One installment of interest being all that is claimed to have been paid to *Walker* during more than twenty years, the bill shows the grossest *laches* on the part of Belding and his assigns. 3. The bill shows that the plaintiff is the speculating owner of a mere equitable claim, and as such is not entitled to the consideration which Belding might have claimed, and is in no better position than

the assignee of a mere chose in action. 3 Johns. Ch. R., 216. 4. This case is very different from that of *Rogan vs. Walker*, in that the plaintiff never was in possession of the land, but acquiesced for a series of years in *Walker's* possession, and until *Walker* had sold the whole of it. 5. The bill does not show that *Leake* and *Hicks* had any notice in fact of the complainant's claim. See R. S. 1849, p. 319, sec. 10. The instrument given by *Walker* to Belding was recorded as a deed, while it should have been recorded as a mortgage, if intended to operate as such. *James vs. Morey*, 2 Cow., 246; 8 id., 260; 1 Paige, 551. And a party is not bound to take notice of the registry of a deed which is not in a regular chain of conveyances of the legal title. 10 Ohio, 83. 6. The bill seeks relief upon a contract which, at the same time, it claims is void for usury. If there was usury the parties were *in pari delicto*, and equity will not interfere in respect to the enforcement of the contract, except to relieve against the usury. 1 Story's Eq. Jur., 296, 300; *Bates vs. Chester*, 5 Beavan, 103. And the plaintiff stands in the position of an assignee, and cannot set up usury between the original parties. 1 Barb., 271; 13 Mass., 104, 443, 515; 15 id., 96, 103; 10 Wheat., 367; 11 Paige, 635; 1 Johns. Ch. R., 158. At all events the bill should tender the highest legal rate of interest (which was 12 per cent.), and also costs. 1 Johns. Ch. R., 366; 18 id., 544. 7. The suit is barred by the statute of limitations. R. S. 1839, p. 263; R. S. 1849, p. 644; *Spoor vs. Wells*, 3 Barb. Ch. R., 199; *Calkins vs. Calkins*, 3 Barb. (S. C.), 305; Cow. & H.'s Notes, Pt. 1, pp. 350–2. The bar may be pleaded by way of demurrer. *Humbert vs. Trinity Church*, 24 Wend., 587. If Belding or his assignees had any equity of redemption, it should have been insisted on by a proper suit within ten years *from the time of the default in payment*, to wit, before the 18th of February, 1853. *Fullerton vs. Spring*, 3 Wis., 667; *Sheldon vs. Sheldon*, id., 699; *Parker vs. Kane*, 4 id., 1. 8. The order dismissing the bill was not appealed from, and it was not in the power of the court at a subsequent term to vacate the order and reinstate the case. The order

reinstating the case is a nullity, and the order of dismissal is in full force.

*J. A. Sleeper*, for respondent:

1. The rights of the parties are settled by *Rogan vs. Walker*, 1 Wis., 527, as those of mortgagor and mortgagee. The entry of the mortgagee after condition broken, does not injuriously affect the mortgagor's equity of redemption, unless the latter allows the mortgagee to continue in possession, without accounting for the rents and profits, so long that his action is barred by lapse of time, which would occur under our statute in ten years from such entry. 2 Story's Eq. Jur., § 1028; *Calkins vs. Calkins*, 3 Barb. (S. C.), 307; *Hodson vs. Treat*, 7 Wis., 263; *Demarest vs. Wynkoop*, 3 Johns. Ch. R., 129; *Slee vs. Manhattan Co.*, 1 Paige, 48; *Hughes vs. Edwards*, 9 Wheat., 489. 2. Possession will be presumed to have continued in the mortgagor, and the mortgagee must show that the possession has been changed and that he has held under the mortgage during the whole term of the statute bar. *Moore vs. Cable*, 1 Johns. Ch. R., 385. The bill shows that *Walker* broke in and committed an injury upon the freehold in December, 1845 (less than ten years before this suit was brought), and then went away, and that from that time until his grantees went into possession, about a year before the bill was filed, the premises were unoccupied. 3. As to the charge of *laches*, the bill alleges that the plaintiff has frequently requested the defendant to adjust the matter and receive the sum due him on the bond, &c., but that the defendant has refused. 4. The deed from *Walker* to Belding was full notice to all parties who purchased from the former, and they can therefore have no rights against Belding or his assigns, other than *Walker* himself would have. 5. If we admit that the relation of the parties is not that of mortgagor and mortgagee under a *pure* mortgage, the plaintiff, as *cestui que trust*, may maintain this bill against the defendant as a *trustee*, and this right is not barred by lapse of time. (1). The original transaction created that relation. *Walker* having purchased the land with money loaned by him to Belding, held the land in trust for the latter. He conveyed to Belding in execution of the trust, and the con-

dition in the deed that upon failure to perform the conditions of the bond, the conveyance, &c., and the estate created thereby should determine, would at most² have the effect to revest in *Walker* the *estate which he had before*, which was a trust estate. His beneficial interest in the land would then be for the amount of his loan with interest, and for the residue he is bound to account to Belding or the assignees of his equitable estate. (2). The time for bringing the bill for this accounting would not commence until *Walker* had realized something out of the estate, unless the latter had previously denied that he held as trustee. *Sheldon vs. Sheldon*, 3 Wis., 699, 707–8. The prayer for general relief is sufficient to enable the court to grant this relief, though there is no special prayer for an accounting. 6. If the defendants wished to get rid of the order reinstating the suit, they should have moved to set it aside, or appealed from it.

January 2.　　*By the Court*, DIXON, C. J. This a bill to redeem, filed under the old system, by the respondent, as the owner of the equity of redemption, against the appellant and one *Ellis Baker*, as original mortgagees, and *Isaac E. Leake*, *Samuel D. Smith*, *Lewis Story*, and *John Hicks*, as having or claiming some interest in the mortgaged premises under the mortgagees first named. The premises in controversy are two hundred and forty acres of land, situate in the county of Rock. So far as the written instruments are concerned, the transaction between the original parties is in all respects the same as that detailed in the case of *Rogan vs. Walker*, 1 Wis., 527. Those parties were *Walker* and *Baker* on the one side, and one Henry K. Belding on the other. The respondent, through several mesne conveyances, claims title as the owner of the equity of redemption under Belding. In addition to claiming that the written instruments themselves created the relation of mortgagor and mortgagee between Belding and the appellant and *Baker*, the bill likewise charges that the real transaction was a loan of money by the latter to the former, with the understanding that the money loaned was to be applied by the appellant to the purchase or entry of the lands in question, and

June Term,
1860.

KNOWLTON
v.
WALKER.

that the title was subsequently to be conveyed to Belding, who was to secure the repayment to the appellant and *Baker* of double the sum loaned, at the end of four years, with interest payable annually at seven per cent., by a mortgage upon the premises. It is alleged that through the artful and fraudulent practices of the appellant, this agreement was never literally carried out, but that Belding was induced to accept the conditional conveyance as and for an absolute deed with a mortgage back, believing that in substance it amounted to the same thing. The view we have taken of the case, however, renders a notice of this branch of it unnecessary. The conveyance and bond were executed the 20th day of February, 1839. The money became due the 18th day of February, 1843. It appears from the bill that but one installment of interest has been paid. Belding resided upon and had a pre-emption claim to 160 acres of the land, and was also in possession of the other 80 acres at the time of the entry and sale, and so remained until August, 1843, when he sold out, and possession was taken by the purchaser. This possession of Belding and of those claiming under him, was continued down to about the 11th day of December, 1845, when the premises were conveyed to the respondent. The bill alleges that about that time the appellant, with force and arms, entered upon the premises and tore down and destroyed the dwelling house in which Belding and others claiming under him had theretofore resided, and that since that time the premises have remained open and unoccupied. This entry and destruction of the house is charged to have been a wanton and malicious trespass, and not an entry in pursuance of the power reserved in the conveyance to Belding. The first attempted conveyance of any part of the land by the appellant, was in 1854, when he executed and delivered a deed of 80 acres to the defendant *Leake*. This bill was filed on the 31st day of August, 1855, and in it the respondent offers to pay to the appellant or such other persons as may be entitled thereto, such sums of money as may be justly and equitably found due upon the original agreement of the parties. The case comes before this

court upon an appeal from an order of the circuit court over-ruling the demurrer of the appellant to the bill.

In support of the demurrer two objections are principally urged.    One is that it is not the case of a bill to redeem from a mortgage after condition broken and possession taken by the mortgagee; that the original transaction did not cre-ate the relation of mortgagor and mortgagee; but that it is more in the nature of a bill to enforce the specific perform-ance of an executory agreement for the sale of lands, and that it discloses such negligence and omission of duty on the part of the respondent and those under whom he claims, as disentitles him to any relief at the hands of a court of equi-ty.    The other objection is, that the claim is barred by the statute of limitations.    Besides these there are some of mi-nor importance, which will also be noticed.

Upon the first question we have only to say, that it was fully determined by the learned judge who decided the case of *Walker vs. Rogan*, that the instruments in question did, in substance, amount to a mortgage with a right of foreclos-ure on the part of the appellant, and also of entry as mort-gagee in case he found the premises vacant, and a right of redemption on the part of Belding, his representatives and assigns.    Being entirely satisfied with the principles there laid down, and the reasoning by which that branch of the case is supported, we shall enter upon no discussion of it. We are content to leave it where it is there left.

It being established that Belding, and those representing his interest, had a right of redemption, we are next to inquire within what time that right must be exercised, or whether, as it is insisted by counsel for the appellant, it may be lost within the period prescribed by the statute of limitation, by mere neglect to pay the principal and interest, or any part of it.    In support of this principle, the counsel, for the most part, relies upon some remarks which occur in the opinion in *Rogan vs. Walker*.    It is evident from the context and the manner in which those remarks are made, that they are not the result of any mature thought or investigation of the sub-ject.    At page 574, the judge expressly says that he does not undertake to determine whether the equity of redemp-

tion thus created is or is not precisely the same in kind, degree and duration as in the case of a purely technical mortgage. After a careful examination, we can find no authority for the distinction thus intimated. We are unable to see how it can be sustained on principle. An equity of redemption is an estate in the land itself, which may be devised, granted, and charged with the payment of other debts of the mortgagor or owner. It is a part of the law of the land, and as such it cannot, in case of a mortgage, in any way be provided by agreement, that a court of equity shall not give relief. Whenever therefore it is ascertained that a transaction is a mortgage, this equity at once arises, and courts cannot distinguish between one mortgage and another. The estate, if it be an equity of redemption, must in all cases be the same, and must be governed by the same rules which regulate other similar interests. It matters not what peculiar form the instrument evidencing the transaction may have taken, the substance of the inquiry always is, Was it a security for the loan of money or other property? And this being answered in the affirmative, it is difficult to perceive why, in a court of equity, one borrower should stand upon a different footing from another, or why the estate of one owner of an equity of redemption should be less durable and complete than that of another. The only practical difference between an equity under a pure mortgage and one under an *impure* one, or an instrument not technically a mortgage, is that the latter is often much more difficult to be established. But should it for that reason be less an estate? Should the mortgagee be rewarded for an attempt to disguise the real nature of the transaction? We think not. We can discover no good reason for discriminating between the two. In the many cases to be found in the books, where deeds and other instruments absolute upon their face have been declared to be mortgages, and a right of redemption decreed, we do not remember any in which the distinction has been made. In the absence of fraud or other improper conduct on the part of the applicant, the only limit which has been prescribed to the exercise of the right to redeem is that fixed by the statutes or by courts of equity in analogy to them.

VOL. XIII—18

In the case of *Russell vs. Southard*, 12 How. (.U S.), 139, re-
ferred to in *Rogan vs. Walker*, upwards of nineteen years had
elapsed after the execution and delivery of the deed, with-
out a payment or tender of the principal and interest, before
the action was commenced; and yet the complainant was
permitted to redeem. Mere lapse of time, short of that
fixed by the statute, unaccompanied by other circumstances,
seems never to have been allowed to affect the right itself,
although as in the case last referred to, it often has an impor-
tant influence over the terms and conditions upon which a
redemption will be allowed. We must therefore treat the
appellant the same as any other mortgagee. He has always
had the same remedies at hand as other mortgagees, and like
them he must abide the consequences of his neglect to use
them.

We hardly need add that, since the case presents the ques-
tion of a right to redeem, the authorities cited by counsel for
the appellant as to the effect of *laches* in cases where a spe-
cific performance of executory contracts for the sale of lands
is sought, and the arguments drawn therefrom, are wholly in-
applicable. We are here dealing with an estate in the land,
which is governed by fixed and definite rules, and over
which, from its very nature, courts possess no dispensing
power, and not with a matter which rests in our sound dis-
cretion.

This brings us to the consideration of the statute of limi-
tations, or whether it appears from the bill that it was filed
at a time when the bar created by that statute had become
effectual. Both counsel agree that the period prescribed is
ten years, which is undoubtedly a correct interpretation of
it, but there they separate. For the appellant it is insisted
that it began to run from the time the money became due,
viz., on the 18th day of February, 1843. For the respon-
dent it is contended that it would only begin to run from
the time that *Walker* re-entered, and took and continued in
actual possession of the premises, and that inasmuch as the
bill shows that he has not so repossessed himself, it has not
yet commenced running. There is no doubt in our minds
that in such case the statutory period dates only from the

time the mortgagee takes actual, open and notorious posses-
sion of the premises.   This is too well settled to admit of
discussion.   If after he has done so, the mortgagor permits
him thus to continue in possession for the period prescribed,
without proceeding to redeem, or requiring an account of
the rents, issues and profits, the bar is complete, but not till
then.   In this case therefore it is unnecessary to determine,
whether the entry and destruction of the dwelling-house by
the appellant in 1845, as set forth in the bill, is or is not to
be considered as a re-entry and repossession of the premises
under the deed; for conceding that it is, still the bill was
filed within ten years after that date.

A question is made as to the manner in which the con-
veyance from the appellant to Belding was recorded.   The
bill alleges that it was recorded as a deed in a book of deeds
in the office of the register of Rock county.   It is insisted
for the appellant, and several cases are cited to show, that
an instrument executed and recorded as a deed, but intended
as a mortgage, is not constructive notice to any person, and
that subsequent purchasers and alienees without actual no-
tice, will be protected notwithstanding such recording.
This may be true, but the doctrine cannot be applied to this
case, or if it could, it would only be to the detriment of the
appellant himself.   He is the mortgagee, and if his interest
can only be preserved by having the instrument showing
him to be such, recorded as a mortgage in the office of the
proper register, then it would follow that Belding, or those
claiming under him, could sell the premises in such a way
that the purchaser would hold them clear of his lien.   This,
however, cannot be so, for the reason that the very instru-
ment on record which would show the purchaser that Beld-
ing, or those holding under him, had title, would likewise
show the nature of that title, and that the appellant, as his
grantor, reserved an interest in the premises equivalent to
that of a mortgagee.   But a better answer to this position,
perhaps, is that as to Belding and his assigns, the conveyance
from the appellant was a deed.   It was their proper title,
and to make it effectual for the purpose of protecting their
rights, it must be recorded as a deed.   If in so doing it

June Term,
1860.

should operate incidentally to the injury of the appellant, it would certainly not be their fault so far as the recording is concerned, and they clearly should not be the losers by it. The instrument evidencing his mortgage interest, is in the form he chose to adopt, and if on account of its form there should be a failure to comply with the registry laws, and consequent loss, it would be upon him, and not upon them, that it ought to fall.

Another question is also made upon the allegation of usury contained in the bill. It avers that the original agreement was usurious and void, and the respondent prays to be relieved from it according to the usual course of equity in such cases. This, it is said, cannot be done; that the respondent cannot seek relief upon a contract, and at the same time claim it to be void for usury. Without deciding whether the respondent can take advantage of the usury, if there was any—a question more proper to be determined hereafter than at this time—we may say that such a claim, however unfounded in law, does not render a bill demurrable. If it be otherwise good, and shows a valid claim for relief, it will not be vitiated because the complainant has asked for more than he is entitled to receive. But admitting that the respondent may take advantage of the usury, his claim that the contract is void for that reason, does not preclude him from asserting that it is a mortgage, and demanding judgment that he be allowed to redeem. It would be strange indeed if the assertion that a mortgage was void for usury should be held to cut off the mortgagor's equity of redemption, in case it should be decided that it was not.

The order of the circuit court is affirmed, with costs.