Ellis vs. Southwestern Land Co.

ELLIS, Respondent, vs. SOUTHWESTERN LAND COMPANY, imp., Appellant.

*February 22 — March 14, 1899.*

*Equity: Reformation of deed: Mistake: Laches: Trusts and trustees: Adverse possession.*

1. Mere delay, short of the statutory period of limitation, in bringing an action to reform a deed does not preclude the granting of such relief, where the action is brought soon after the discovery of the mistake on which it is based, and it does not appear that the other party has been prejudiced by the delay.
2. The possession of land by a trustee is the possession of the *cestui que trust* and will not, however long continued, ripen into title in the trustee.
3. By mistake the land in question, the title to which was held in trust, was conveyed by the trustee with other lands to a corporation of which he was president and manager, conducting its business and his own as if they were one. When he afterwards withdrew from the corporation he conveyed to it all his property of every kind in consideration of its assuming certain indebtedness. Thereafter the corporation delivered to him a lease of the land in question which had been executed by it as lessor, with intent to relinquish any claim to the property. The mistake had not then been discovered, and both parties supposed the legal title to this land was still in the trustee. *Held*, in an action by the *cestui que trust* to correct the mistake by reformation of the original deed to the corporation, that the latter was not entitled, as a condition of a recovery, to have the *cestui que trust* pay to it the sum, if any, which he owed the trustee on account of the land.

APPEAL from a judgment of the circuit court for Eau Claire county: W. F. BAILEY, Circuit Judge. *Affirmed.*

Action to reform a deed of real estate and recover possession of lands alleged to have been, by mistake, included therein and recover the rents and profits received by the grantee. The complaint stated facts sufficient to constitute a cause of action of the character indicated. The material facts were put in issue by the answer. In support of the

complaint the evidence established without controversy, or tended to establish, the following facts:

Plaintiff, at the time of the trial, was an old man about eighty years of age.  He was uneducated, a farmer by occupation, and had resided on a farm some sixteen miles from the city of Eau Claire for forty years.  Defendant J. F. Ellis was a lawyer, real-estate dealer, and loan agent, doing business as such in the city of Eau Claire, and had been so engaged since prior to 1876.  He did most of his father's business during most of the time mentioned, and took title to himself of considerable real estate, which he and his father testified on the trial belonged to the latter.  In 1876 an agreement was entered into, partly by the father and partly by the son in the father's behalf, to purchase of a Mrs. Cook the property in question in this case, which agreement was consummated by the son conveying to Mrs. Cook eighty acres of land the title of which was in his name but which was considered the property of the father, and by Mrs. Cook conveying the property in question to defendant Ellis subject to a mortgage of $600.  There was an agreement between the father and son that the latter should pay off the mortgage and reimburse himself therefor out of the income of the property, and the title was taken from Mrs. Cook pursuant to that agreement.  The title to the property remained in the name of defendant Ellis till February 10, 1887, during which time it yielded a considerable income each year, all of which was received by said Ellis.

In 1885 defendant Ellis had considerable real estate, which he had accumulated in the course of his real-estate business, and he employed one Allen to assist him in conducting his business, agreeing to give Allen a one-third interest in the property for five years' services.  Thereafter, up to February 10, 1887, Allen worked for Ellis, during which time the property in question was handled in the office, the taxes paid thereon and rents collected, the same as

on other real estate the title to which was in the name of Ellis, but there was some talk between Ellis and Allen, during that period, indicating that the property in question belonged to plaintiff. About February 10, 1887, an agreement was made between defendant Ellis and Allen, to the effect that the business that they were conducting, and the property in such business, should be put into a corporation and the stock taken by the two, except such as might be necessary to enable them to complete the corporate organization. The defendant *Southwestern Land Company* was organized accordingly, defendant Ellis subscribing for two thirds and Allen for one third of the stock. To complete the scheme, intending to convey to the corporation the real estate which had been acquired in the real-estate business as aforesaid, and in which Allen was entitled to an interest, Ellis made a deed of the same to the corporation, the consideration named in the deed being $18,000. The real estate in question was conveyed by such deed.

Defendant Ellis, from the time of the organization of the corporation till he sold out in 1893, as hereinafter mentioned, was its president, treasurer, and one of its board of directors, and controlled its business and handled all the property owned by the corporation, very much the same as before the conveyance heretofore mentioned was made. All the income from the business, and the income from business conducted by Ellis outside the corporation, went into a common fund, which was deposited in Ellis's name. Out of that fund Ellis took money as he needed it, and all of the expenses of the corporation, including taxes upon its lands, were paid out of it by Ellis's personal checks. The business of the corporation was so conducted that it and J. F. Ellis were practically one. When the deed was made to the corporation it was pursuant to an offer made by J. F. Ellis to J. F. Ellis as president of the corporation. The whole affair was handled by him on both sides in making the agreement and in consum-

Ellis vs. Southwestern Land Co.

mating it by the conveyance to the corporation. The income from the property in question was collected, sometimes by Ellis and sometimes by Allen, and uniformly went into the common fund in the hands of Ellis. Some written leases were made of the property, all of which were made by the corporation as lessor. The property was twice mortgaged by Ellis and his wife to secure his individual debts while the title was in the corporation, Allen on one of the occasions knowing the facts and as notary taking the acknowledgment of the mortgage.

In September, 1893, Ellis severed his connection with the corporation and conveyed to it all his property of every name and nature in consideration of the corporation agreeing to pay certain indebtedness for which he was liable. Thereafter, up to March, 1894, Ellis remained in the office of the corporation as before, and the corporation continued to collect the rent on the property in question. In March aforesaid, Ellis vacated the office of the corporation, about which time Allen, as manager, handed to Ellis the lease of the disputed property. The circumstances attending the delivery of the lease to Ellis were controverted on the evidence. Ellis testified that Allen handed him the lease, stating that the property did not belong to the corporation. Allen said that the lease was delivered to Mr. Ellis as the result of a determination by the corporation to make some provision for Mrs. Ellis, who was his sister; that such determination was to turn the property over to Mrs. Ellis, and that he so stated to the defendant Ellis at the time the lease was delivered. He testified, however, that at the time of such delivery Ellis stated that the property belonged to his father. For a year or two after the lease was delivered as aforesaid Ellis collected the rent, and during the same time twice renewed the lease in the name of J. F. Ellis, agent, as lessor. After the rent had been collected by Ellis as stated, the officers of the corporation, becoming offended because of

Ellis's conduct in stimulating litigation against it, repudiated their determination to allow Mrs. Ellis to have the property, and demanded of the tenant in possession to attorn to the corporation, which was done. This action was soon thereafter commenced, plaintiff claiming that he did not know till about the time of such commencement that the title to the property was in the corporation.

Defendant Ellis testified on the trial that he was ignorant of the condition of the title till shortly before the action was commenced, that it was never intended by him to convey the property to the corporation, and that he did not know that it was included in the conveyance. The court found the facts in accordance with the foregoing, and that the property, from the time it was purchased from Mrs. Cook in 1876, was in fact the property of the plaintiff, but was held in trust by the defendant Ellis to secure him for advances made to pay off the $600 mortgage; that the advances therefor had been returned to Ellis out of the income of the property, and that plaintiff was entitled, as against defendant Ellis, to a conveyance of the property to him; that the property was conveyed to the corporation by mistake and that such mistake was not discovered till shortly before this action was commenced; that the corporation received and retained the following income from the property: August 1, 1891, to April 1, 1893, $181; April 1, 1893, to April 1, 1895, $95; November 1, 1895, to March 22, 1897, $124. The evidence showed that the corporation paid the taxes of 1896 at $19.25. Whether this amount was credited to the corporation in the accounting does not definitely appear.

Judgment was awarded according to the prayer of the complaint, for a conveyance of the property to plaintiff; also for a recovery by plaintiff of the corporation of $404 as income received by it, with interest on such amount from the time received, according to the findings. Judgment was entered accordingly.

Ellis vs. Southwestern Land Co.

For the appellant there was a brief by *Wickham & Farr*, and oral argument by *James Wickham*. They contended, *inter alia*, that the laches of plaintiff was conclusive against his right to recover. *Sable v. Maloney*, 48 Wis. 33; *Sheldon v. Rockwell*, 9 Wis. 158; *Kobiter v. Albrecht*, 82 Wis. 58; *Holden v. Meadows*, 31 Wis. 284; *Combs v. Scott*, 76 Wis. 662; 22 Am. & Eng. Ency. of Law, 1043; *Hammond v. Hopkins*, 143 U. S. 224; *Willard v. Wood*, 164 U. S. 502; *Galliher v. Cadwell*, 145 U. S. 368; *Penn M. L. Ins. Co. v. Austin*, 168 U. S. 685. The alleged agreement between father and son was void under the statute of frauds and under the statute of uses and trusts. *Skinner v. James*, 69 Wis. 605; *Gallagher v. Gallagher*, 89 Wis. 461; *Campbell v. Campbell*, 70 Wis. 311; *Krouskop v. Krouskop*, 95 Wis. 296; *Caprez v. Trover*, 96 Ill. 456; *Stephenson v. Thompson*, 13 Ill. 186; *Dickinson v. Davis*, 80 Am. Dec. 202.

*Frederick A. Teall*, for the respondent.

MARSHALL, J. The assignments of error go mainly to whether the findings of fact are contrary to the clear preponderance of the evidence. We do not deem it advisable to discuss the evidence at any great length for the purpose of supporting the conclusions at which we have arrived. It may be admitted that the situation of plaintiff in regard to the title to the property in question is in many respects inconsistent with the claim that it belonged to him and was conveyed to the son J. F. Ellis to secure the latter for advances made to discharge incumbrances thereon to the amount of $600; but the facts in that regard are supported by the direct and positive evidence of the two Ellises, being all the direct evidence on the subject, and we are unable to say that the trial court's decision as to where the truth lies is wrong. The same may be said as to all the facts requisite to sustain the judgment. Starting with the fact that the property was that of the plaintiff, the subsequent occur-

rences as found by the court below are all reasonable when viewed in the light of attending circumstances, and are in accord with the direct evidence of the two Ellises, and in many respects of Allen, who testified on behalf of the defendant, and in fact all the direct evidence in the case.

On the question of mistake it appears that the property which J. F. Ellis intended to put into the corporation, and which Allen supposed was to be put in, was that which had accumulated in Ellis's real-estate operations, not property which he merely held in trust for others.  J. F. Ellis, as president of the corporation, made the agreement for the transfer of property with J. F. Ellis, both as to the particular property to be transferred and the consideration therefor.  He testified that the real estate in question was not included in the agreement.  True, after the conveyance there were occurrences indicating that such property was understood to be corporate property, yet they were not inconsistent with its being property of another, administered by the corporation in the capacity of agent, while during the same time there were many occurrences entirely inconsistent with any other theory than that the legal title to the property was in J. F. Ellis.  This refers to his having mortgaged the property several times to secure his individual indebtedness, and with the knowledge of Allen, who was the only other person interested in the corporation.  Again, when Ellis ceased to office with the corporation, the conduct of Allen, who then represented the corporation, was inconsistent with the legal title to the property being otherwise than as claimed by Ellis.  He had made an assignment of all his property to the corporation in consideration of an agreement on its part to pay certain liabilities for which he was responsible.  No deed, so far as appears, conveying real estate, was made pursuant to that agreement, yet long after the transfer by Ellis was consummated Allen, for the corporation, handed Mr. Ellis the lease of the property in

question, because, as he says, the corporation had concluded to let Mrs. Ellis have it. Let it be admitted that the lease was turned over at that time to effect the purposes testified to by Allen, the fact that no act was considered necessary to carry out such purpose, except to deliver the lease, is inconsistent with the theory that it was then supposed by any one connected with the transaction that the title to the real estate was in the corporation. It is consistent only with the theory that it was supposed the title was in Ellis and the idea was not to convey anything to Ellis for his wife, but to release him from any obligation as to the property in question under his general transfer to the corporation. It seems that there is ample evidence to sustain the findings of fact as made by the trial court at every point.

It is said that plaintiff lost his right by laches. We know of no rule of estoppel by laches applicable to the facts of this case. The action was brought very soon after the discovery of the mistake. Plaintiff did not sleep on his rights. There is no evidence to warrant a claim that plaintiff was negligently ignorant of the situation. The corporation was not prejudiced by the delay in any way. It does not appear that it incurred any expense or was a loser to any extent by reason of plaintiff's asserting his rights at the late day instead of soon after the transfer by J. F. Ellis to it. Mere delay, within the statutory period for relief at law, does not preclude a recovery in equity, and at most that is all which appears here. *Knowlton v. Walker*, 13 Wis. 264. If delay were shown and in the meantime a change in the situation of the parties or the property, so that it would be unconscionable on that account to allow plaintiff at the late day to successfully assert his claim, the question would be different. There is no ground for saying that defendant was prejudiced by laches of plaintiff, or to show that plaintiff was precluded from recovering under the statute of limitations pleaded in the answer. Defendant relied on the

Ellis vs. Southwestern Land Co.

ten-year statute (R. S. 1878, sec. 4215). That applies only to an adverse possession of ten years. The possession here was not adverse, but by agreement. The possession of J. F. Ellis from beginning to end was the possession of plaintiff. Such a possession, however long continued, will not ripen into title. *Lampman v. Van Alstyne*, 94 Wis. 417.

There is a contention that defendant was a purchaser for value without notice. The answer to that is that the court found the facts to be, in substance, that the corporation neither paid anything for the property, nor intended to, but obtained the title through mistake.

It is further contended that there was at least something due J. F. Ellis on the property from plaintiff, and that a recovery should not have been had by plaintiff except on condition of payment to the defendant of any sum due J. F. Ellis. The trouble with that is: First, the court found that nothing was due J. F. Ellis from plaintiff, which we see no reason for disturbing; and, second, the corporation delivered the lease of the property to J. F. Ellis after he severed his connection with the corporation, intending to relinquish any claim to the property, which, as before stated, must have referred to any claim under the general transfer which Ellis made in consideration of the corporation paying the indebtedness for which he was liable. That, of course, left the corporation without any interest in the property even of the character of an indebtedness of plaintiff to J. F. Ellis if such indebtedness existed.

The foregoing covers all points made in the appellant's brief which are considered of sufficient significance to call for special mention, and requires an affirmance of the judgment.

*By the Court.*— The judgment is affirmed.