# Erie v. Erie Traction Company, Appellant.

*Street railways—Municipal consent—Use of other company's tracks without municipal consent—Constitutional law.*

A grant by a municipality to a street railway company to operate its own lines on certain streets and subject to certain conditions and regulations does not carry with it the right of the company obtaining such franchise to permit other companies to come into the city and use its tracks without municipal consent and against municipal protest.

Where a street railway company has lost municipal consent to the use of streets by nonperformance of precedent and subsequent conditions in the ordinance granting the consent, it cannot operate its

cars on another company's tracks with the consent of such company, but without municipal consent.

The provision of section 9, article XVII of the constitution that "no street passenger railway shall be constructed within the limits of any city, borough, or district without the consent of its local authorities," is not to be construed so as deprive municipalities of a right to require street railway companies to secure municipal consent, not only for the "construction" but also for the "operation" of their lines.

Argued May 19, 1908. Appeal, No. 379, Jan. T., 1907, by defendant, from decree of C. P. Erie Co., Feb. T., 1907, No. 4, on bill in equity in case of the City of Erie *v.* Erie Traction Company. Before FELL, BROWN, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an injunction.

The opinion of the Supreme Court states the facts of the case.

*Error assigned* was the decree of the court.

*T. A. Lamb*, with him *E. S. Templeton*, for appellant.— Under several acts of assembly in force in the state of Pennsylvania, it was within the proper of the Erie Electric Motor Company to permit the cars of the Erie Traction Company to be run over its lines within the city of Erie: Rafferty v. Traction Co., 147 Pa. 579; Hestonville M. & F. Pass. R. R. Co. v. Phila., 89 Pa. 210; Millvale Boro. v. Ry. Co., 131 Pa. 1; Conshohocken Borough v. Ry. Co., 18 Montg. 95; Ingersoll v. R. R. Co., 157 N. Y. 453 (52 N. E. Repr. 545); Western Penna. R. R. Co.'s App., 104 Pa. 399.

*John B. Brooks* and *Chas. P. Hewes*, with them *Paul Benson*, for appellee.

OPINION BY MR. JUSTICE ELKIN, June 2, 1908:

This is a bill in equity to restrain the respondent traction company from operating cars upon its own lines, or upon the lines of any other street railway company in the city of Erie, and praying that it be required to take up and remove its tracks from certain streets therein designated. The learned

court below, after full hearing and careful consideration, granted the prayer of the bill and entered a decree requiring the respondent to take up and remove its tracks in said city, and enjoined it from using the tracks of the Erie Electric Motor Company for the purpose of securing an entrance to the city.

The facts upon which the bill was sustained and the decree entered were briefly as follows: The Erie Transit Company several years ago obtained municipal consent to lay its tracks on certain streets in the city of Erie, upon the conditions and subject to the regulations provided by ordinance. One of the precedent conditions of the grant was, that the transit company shall deposit with the city treasurer the sum of $5,000 as a guarantee that the line or lines upon the streets named in the ordinance should be built within the time specified, and failure to complete the lines within the time worked a forfeiture of the franchise and all rights thereunder, in which event said sum required to be deposited reverted to the city as liquidated damages. The ordinance contained many other conditions, and provided for regulation in the operation of the line when complete. The transit company became involved financially, and upon judgments obtained against it executions were issued and all the rights, privileges, franchises and property of said company were sold to persons who subsequently organized the respondent traction company, which became the successor of the former insolvent transit company. The learned court below, sitting as a chancellor, has found all the material facts upon which the rights of the companies depend, concisely and paragraphically, as required by the rules of court, and as a conclusion of law, based upon the facts so found, held that the respondent traction company, by its manifest and continued violations of the conditions upon which municipal consent was obtained, forfeited all rights under the ordinance, and is now occupying the streets of the city without lawful authority. The learned counsel for appellant does not seriously contend that there is any reversible error in the findings of fact or conclusions of law on this branch of the case. It is urged, however, with much force and ability, that even conceding the correctness of the conclusions reached by the chancellor, there is nothing in the situation to prevent the re-

spondent traction company from entering into a contract with the Electric Motor Company, another street railway whose tracks are laid on certain streets in said city, with municipal consent not questioned, by means of which the cars of the respondent company are permitted to be run over the tracks of the motor company. It is argued that inasmuch as the motor company had a valid ordinance to operate its cars on the streets of the city, it could enter into contractual relations with another street railway company, not having municipal consent, to use its tracks for the operation of the cars of the railway company. In other words, that two railway companies have the right to enter into a contract for the joint use of the tracks of one without municipal consent, and this is the question pressed here. The argument is based on sec. 9, art. 17 of the constitution, which provides that "No street passenger railway shall be constructed within the limits of any city, borough or district, without the consent of its local authorities." It is contended that the inhibition of the constitution is aimed at the construction, and not the operation, of a street railway, and, if the question here depended solely upon this constitutional requirement, we are inclined to think there would be some force in this position. A constitution only deals with general conditions, and in no proper sense should questions of detail be included in the organic law. No doubt the intention of the framers of the constitution was only to announce the general principle that street railways should not be constructed within cities or boroughs without municipal consent. This was intended as a safeguard to the rights of municipalities against the encroachment of companies organized to construct street railways in the first instance, and it is a very wise provision, because it would be intolerable for municipalities to be invaded by a public service corporation of this character, so closely connected with the everyday life of their people, without having anything to say about it. It may be the purpose of the constitution was to protect municipalities from such invasion in the construction of lines of street railway, leaving all question of detail as to the operation of the lines when constructed to the municipalities to deal with. However, it does not follow that, because the constitution only deals with the construction of street rail-

ways, that municipalities are limited in the exercise of municipal functions to their construction. Indeed, the regulation of the operation of street railways is more important to the municipality day by day than their construction. Apart from any constitutional authority, and independent of any such limitations and requirements, municipalities have the power to impose reasonable regulations upon street railway companies in the operation of their lines under ordinance. It seems to necessarily follow that a grant to a street railway company to operate its own lines on certain streets and subject to certain conditions and regulations does not carry with it the right of the company obtaining such franchise to permit other companies to come into the city and use its tracks without municipal consent and against municipal protest. We agree that as between the companies themselves, so far as the private rights of the corporations may be involved, there is no reason why a contractual relation should not exist for the use, enjoyment and occupation of the property of either corporation by the other. A very different question arises when the rights of the municipalities are involved. No matter what contracts may be made by corporations as between themselves, and as only private corporate rights may be concerned, no such contract is binding upon a municipality without its consent. The respondent company needs one thing more to entitle it to the use of the streets in the city of Erie, and that is municipal consent. It had municipal consent once, lost it by failure to perform the conditions imposed, and it cannot now secure by indirection what it lost by nonperformance of precedent and subsequent conditions.

The question here concerns the use of the streets of the city of Erie, and it has the right to raise the question in this proceeding.

Decree affirmed at the cost of appellant.