SCHUSTER and another, Respondents, vs. MILWAUKEE ELEC-
TRIC RAILWAY & LIGHT COMPANY and another, Ap-
pellants.

*April 5—April 26, 1910.*

*Equity: Laches: Estoppel: Injunction: Street railways: Unlawful run-
ning of interurban cars on city railway: Acquiescence of land-
owners: When compensation awarded in lieu of injunction.*

1. Mere delay for a period of time less than that fixed by the statute
of limitations governing the particular case, where the opposing
party has not been prejudiced by that delay, is not laches.
2. Acquiescence by the owners of city lots for about nine years in
the running of interurban cars upon the tracks of a city rail-
way in front of their lots did not estop them from obtaining re-
lief by injunction against such unlawful taking of their prop-
erty, where during most of such time they and both railway
companies supposed that the running of such interurban cars
was lawful, and neither company had made material improve-
ments or expended any considerable amount of money upon
faith of acquiescence, and where the frequency, size, and speed
of the interurban trains passing the premises had increased
from time to time, causing substantial damage and depreciation
in the value of the land.
3. When land is being taken by a railway company for public use
without compensation in cases not covered by the statutes, the
landowner is entitled as a matter of right, and not as a mere
matter of grace, to an injunction restraining such taking.
4. Where the landowner has been guilty of laches, a court of equity
has power in some cases to decree compensation in lieu of the
injunction, particularly where his damages are comparatively
small and those of the other party great, and where public in-
terests would be injuriously affected by the injunction.
5. This rule of equity is limited as above, and also to cases in which
the illegality of the defendant's act consists only in taking or
damaging the plaintiff's property without compensation, and
cannot be applied where, after such compensation is made, the
act sought to be done on condition of making compensation is
still contrary to law.

APPEAL from a judgment of the circuit court for Milwau-
kee county: A. H. REID, Judge. *Affirmed.*

For the appellants there was a brief by *Miller, Mack & Fairchild,* and oral argument by *A. T. Fairchild* and *Geo. P. Miller.*

*Roger M. Trump* and *George D. Van Dyke,* of counsel, for the respondents.

TIMLIN, J.  With commendable and lawyerlike precision the argument of appellants' counsel starts out with this proposition: "The one question involved is the character of relief to which respondents are entitled.  That they are entitled to relief either in this action or at law is not denied."  The premises may be stated as follows: Each of the plaintiffs owns a separate piece of land abutting on the south side of Wells street in the city of Milwaukee, which under the laws of this state extends to the center of the street, and that part underlying the street is subject to the public easement for travel and other ordinary street purposes, including the maintenance and operation of a street railway thereon, but is not subject to the additional burden of an interurban railway or cars thereon.  On each of these pieces of land is a large and costly dwelling occupied by the owner of that piece. The *Milwaukee Electric Railway & Light Company* is a street railway corporation, lawfully maintaining its tracks, wires, and poles in Wells street and overlying the lands of plaintiffs in the street, and it maintains and is operating street cars thereon for the carriage of passengers, and propelled by electricity.  The *Milwaukee Light, Heat & Traction Company* is an interurban railway company, having its easterly or nearer terminus outside of the city limits of Milwaukee, and its further or westerly terminus at Watertown, Wisconsin.  It is engaged in the transportation of interurban passengers, and operates at present between Milwaukee and Watertown and the intermediate stations.  The roadbed, rails, wires, and poles of both corporations are continuous, and no physical peculiarities in this respect mark the place

where the property of the first corporation ends and that of the second begins. The cars of the interurban company are larger and heavier than the street railway cars, are usually run at greater speed, and are sometimes in trains of two or more cars, and are furnished with closets for the accommodation of passengers. By contract with the street railway company the interurban company runs its cars down Wells street and over the lands of plaintiffs, which are subject to the said street easement, and has been so doing since September, 1899, which was less than ten years prior to the commencement of this action. These interurban cars do not, like the street cars, stop at street crossings upon signal for the reception and discharge of passengers after they enter the city, but stop only between the city limits and a downtown passenger station for the discharge of the interurban passengers who desire to alight at intermediate points. The interurban railway company has never received from the city of Milwaukee any permission or authority to operate interurban cars on Wells street, and the street railway company is limited by its franchise from the city to the operation of street railway cars.

The trial court found the plaintiff bound by no estoppel and barred by no laches, and enjoined defendants and each of them from maintaining or operating over or upon the premises of the plaintiffs, or over and upon Wells street in the vicinity of said premises, any interurban cars.

The appellants contend that the respondents have been guilty of such laches as to bar relief in equity and remand them to an action at law for damages, or at least of such laches as, considering the comparatively small damages to the plaintiffs and the great damage to defendants, and the loss and inconvenience to the public, to justify or require a court of equity to award compensation to the plaintiffs in lieu of an injunction. Legal conclusions involved in the foregoing concession of counsel and in the stated premises are sup-

ported by *La Crosse City R. Co. v. Higbee*, 107 Wis. 389, 83 N. W. 701; *Zehren v. Milwaukee E. R. & L. Co.* 99 Wis. 83, 74 N. W. 538; *Younkin v. Milwaukee L., H. & T. Co.* 120 Wis. 477, 98 N. W. 215; *Beloit, D. L. & J. R. Co. v. Macloon*, 136 Wis. 218, 116 N. W. 897, and other cases in this court.

The trial court found, in substance, that shortly before September, 1899, when the interurban cars began to run on Wells street, the interurban company expended about $137,000 in constructing a roadbed outside of the city and otherwise, but the respondents did not know of this expenditure or of the intention to run these interurban cars on the tracks of the street railway on Wells street until such use began; that since this use began there was no material improvement made and no considerable amount of money expended by either defendant on Wells street, except for current repairs or for ordinary street railway purposes, and no material improvements or material expenditure of money made by defendants upon the faith of any supposed acquiescence of the plaintiffs or either of them. Plaintiffs had, during a great part of this time, no actual knowledge of their legal rights with reference to the passage of these interurban cars, and the defendants during the same time also supposed they had a lawful right to do what is here sought to be enjoined. The size of the cars, the speed of the trains, and the frequency and size of interurban trains passing in front of plaintiffs' premises has increased from time to time, and it is found that this use of the street for interurban traffic on days when such traffic is heavy, which includes the summer time, causes dust, noise, vibration, and discomfort, thereby injuring plaintiffs in the use and enjoyment of their property and causing a depreciation in the market value of such property. There is no finding and no definite evidence fixing the amount in money of such damage or depreciation, but the court finds that the damage to the plaintiffs is substantial.

We agree with the court below that there is here shown no estoppel against the plaintiffs and no such laches as would absolutely bar them from all relief in equity, in a case where the legal remedy is inadequate and the plaintiffs seek by injunction to prevent an unlawful taking of their property.

However it may be elsewhere, it is settled in this state that:

"Mere delay is not a bar in equity, ordinarily, where it would not be a bar at law, and obviously it is not a bar where there is a statutory period covering the identical subject, short of such period. Angell, Lim. § 25; *Godden v. Kimmell,* 99 U. S. 201. To constitute a bar when the statute has not run, there must be delay, together with facts and circumstances occurring during such delay to the prejudice of innocent parties." *Kropp v. Kropp,* 97 Wis. 137, 145, 72 N. W. 381, 383.

"Mere delay within the statutory period for relief at law does not preclude a recovery in equity, and at most that is all which appears here. *Knowlton v. Walker,* 13 Wis. 264. If delay were shown, and in the meantime a change in the situation of the parties or the property, so that it would be unconscionable on that account to allow plaintiff at the late day to successfully assert his claim, the question would be different." *Ellis v. Southwestern L. Co.* 102 Wis. 400, 407, 78 N. W. 747, 749.

In a case where the delay had been for eighteen years, but the wrong constituted a periodically recurring nuisance, the objection of laches was upon these principles overruled (*Cedar Lake H. Co. v. Cedar Creek H. Co.* 79 Wis. 297, 48 N. W. 371); and in *Ludington v. Patton,* 111 Wis. 208, 245, 86 N. W. 571, 582, it was said in deciding this point: "Any mere delay short of the statutory period for commencing an action in equity does not bar the right involved." It must also be borne in mind that in this state a final injunction against the unconstitutional taking of private property, even for public purposes, without compensation, is not a matter of grace but a matter of right, except as otherwise provided by statute. An injunction against a railroad company

which had appropriated the land of another was at first expressly authorized (ch. 80, Laws of 1858; *Davis v. La C. & M. R. Co.* 12 Wis. 16), then forbidden by statute any time prior to the appraisal of damages by commissioners and unless their award remained unpaid (ch. 175, Laws of 1861; *Andrews v. Farmers' L. & T. Co.* 22 Wis. 288). This last legal condition was continued by ch. 119, Laws of 1872, and ch. 291, Laws of 1873, which are now in force as sec. 1852, Stats. (1898). These statutes, while depriving the landowner of the injunction as an initiatory remedy, conferred upon him the right, in all cases in which the railroad company possessed the power of eminent domain but had failed to exercise it, and had entered upon the land with the express or tacit consent or acquiescence of the landowner, to himself institute and carry on condemnation proceedings. But when the award was not paid or was invalid, or there was no consent or acquiescence by him, the landowner was entitled to an injunction *ex debito justitiæ,* as was said in *Bohlman v. G. B. & M. R. Co.* 40 Wis. 157; "as a matter of right," as was said in *McCord v. Eastern R. Co.* 136 Wis. 254, 116 N. W. 845. And see *Stolze v. M. & L. W. R. Co.* 104 Wis. 47, 80 N. W. 68, and cases cited in opinion. In all such cases the injunction is not absolute, but until the award is made or paid, as the case may be.

We are, however, here presented with a case where the street railway company has no power to acquire by condemnation the lands of the plaintiffs for the purpose of running interurban cars over them, and where the interurban company, although given by statute the power to condemn land for its railroad purposes in some cases, is without that power with reference to city streets upon which it has received no permission to operate its cars. Sec. 1863*a,* Stats. (Supp. 1906); ch. 580, Laws of 1907; *Beloit, D. L. & J. R. Co. v. Macloon,* 136 Wis. 218, 116 N. W. 897. Appellants therefore invoke the rule that equity will in certain cases refuse

an injunction upon condition that the defendant make full compensation to the plaintiff, and award an issue to ascertain the amount of such compensation.    That there is in certain cases such an equitable jurisdiction cannot well be gainsaid, in view of the many decisions covering this subject.    The grounds for the exercise of this jurisdiction are various, as in *Jackson v. Stevenson,* 156 Mass. 496, 31 N. E. 691, where an injunction was denied but the cause retained in equity for compensation, because it would be futile to relegate the plaintiff to his action at law, his right which he asserted being one solely cognizable in equity and not recognized by law at all.    Or in *Charleston & W. C. R. Co. v. Hughes,* 105 Ga. 1, 30 S. E. 972, where the railway company had no power of condemnation; had entered lawfully into possession under one who was life tenant; its interest had expired; title devolved upon the plaintiff, who sought to bring ejectment for a fragment of the line of railroad, the taking of which would cut the line of railroad in two, destroy its continuity, hence its value, and hence prevent the discharge of the duty the railroad owed the public under its charter.    The property of the road was in the hands of a receiver *in custodia legis,* and the plaintiff was obliged to apply to the court of equity for leave to bring ejectment against the receiver.    It was held that such condition should be imposed upon plaintiff that he would be required to do equity, which, in the view of the court, was to submit to the awarding of an issue to determine his compensation, and that a writ of possession in plaintiff's favor only issue in case the compensation so ascertained remained unpaid.

In other cases where one suffers special damage from a public nuisance and seeks in equity its abatement, if there has been laches on the part of the plaintiff, and the damage to the plaintiff is slight compared with the loss which will fall upon the defendant from the injunction, and the al-

leged nuisance is not unlawful *per se,* but only by reason of the manner in which it is conducted or maintained, the court denies the injunction and relegates the plaintiff to his remedy at law, or retains the cause in equity and awards compensation in lieu of the injunction sought. *Crosby v. Smith,* 19 Wis. 449; *Cobb v. Smith,* 23 Wis. 261 (this subject is regulated by statute) ; *McDougald v. New Richmond R. M. Co.* 125 Wis. 121, 131, 103 N. W. 244; *Ballentine v. Webb,* 84 Mich. 38, 47 N. W. 485, 13 L. R. A. 321.

The cases involving the right of a landowner to enjoin the unlawful operation of a railroad in the street in front of his land have sometimes been considered as coming within the law relative to a public nuisance causing damage to the person in front of whose premises the road is operated and who thereby sustains some special injury. This is noticeable in those states in which the title to the streets is vested in the city, and not a mere easement, as in this state. But it may be stated that suits in equity by a landowner to enjoin the wrongful operation of a railroad upon his land form a class by themselves, and in cases not reached by our railroad statutes, if it appears that there has been laches or delay on the part of the landowner in seeking injunction, and the effect of the restraining order would be to sever and destroy existing property of the railroad company and prevent it from carrying out the charter duties it owes the public, and the damages to the landowner are comparatively small, and the operation of the railroad is not illegal except in so far as the damage it causes plaintiff, then the court will, by reason of the plaintiff's laches and the consequence of enforcing his demand, either close its doors to the plaintiff and relegate him to his legal remedy where he has one, or retain the cause in equity for compensation in lieu of an injunction. When and under what rules the court will adopt the latter course instead of the former does not appear to be very well settled. We need

not determine that question in this case.    See, however, *New York City v. Pine,* 185 U. S. 93, 22 Sup. Ct. 592; *Penrhyn S. Co. v. Granville E. L. & P. Co.* 181 N. Y. 80, 73 N. E. 566; *Penn Mut. L. Ins. Co. v. Austin,* 168 U. S. 685, 18 Sup. Ct. 223; *Knoth v. Manhattan R. Co.* 187 N. Y. 243, 79 N. E. 1015; *Galway v. Met. E. R. Co.* 128 N. Y. 132, 28 N. E. 479.    For, even if we assume that the laches which is not sufficient to defeat plaintiff in equity and relegate him to his action at law may still be sufficient to warrant the court in decreeing compensation, instead of an injunction, where the damages are grossly disproportionate, and that the instant case contains all the other elements requisite to warrant such action of the court, there are several insuperable and distinguishing considerations which forbid.    In the first place the operation of the interurban cars on Wells street is unlawful, not only as against the plaintiffs, whose private rights are invaded, but as against the public.    The interurban company is not carrying out, but violating, its charter duty to the public in so doing.    Can a court of equity, in consideration of money paid to the plaintiffs in satisfaction of their private wrongs, license the interurban company to do that which the law forbids?    We think not.    *Broadbent v. Imperial G. Co.* 7 De G., M. & G. 436; *Hennessy v. Carmony,* 50 N. J. Eq. 616, 25 Atl. 374; *Swinhart v. St. L. & S. R. Co.* 207 Mo. 423, 105 S. W. 1043; *Pennsylvania R. R. v. Montgomery Co. P. R.* 167 Pa. St. 62, 31 Atl. 468.

"As to the principle invoked, that a chancellor will refuse to enjoin when greater injury will result from granting than from refusing an injunction, it is enough to observe that it has no application where the act complained of is in itself, as well as in its incidents, tortious.    In such case it cannot be said that injury would result from an injunction, for no man can complain that he is injured by being prevented from doing to the hurt of another that which he has no right to do. Nor can it make the slightest difference that the plaintiff's property is of insignificant value to him as compared with

the advantages that would accrue to the defendants from its occupation." *Sullivan v. Jones & L. S. Co.* 208 Pa. St. 540, 555, 57 Atl. 1065, 1071.

When a continuous line of railway is sought to be severed by injunction, and continuity is an essential element of value as well as a necessity for carrying out the legal duty of the railroad to the public, and the operation of the road is lawful except as regards the private wrong to the plaintiff, a different case is presented than where, as in the case at bar, the railroad is seeking to acquire, in violation of the rights of the plaintiffs and in disregard of its public duty, property beyond the terminus of its authorized line. None of the property of the appellant interurban railway company will be destroyed by the injunctional decree appealed from; none of its duties to the public impaired by the enforcement of this decree. It will merely be restrained within its legal powers, and the public will continue to possess and enjoy all that was ever granted to or expected of the interurban company. The only loss or damage to the defendants will be the loss of profits which may follow from a cessation of their illegal acts and a return to the methods of transportation contemplated by public law, and the only inconvenience the public can suffer will be the inconvenience of observing the law of this state. If public convenience requires the operation of interurban cars on Wells street, the law points out a way in which the public, through its authorized representatives, may acquire this right. The contract between the appellants is, like the similar contracts in *Erie v. Erie T. Co.* 222 Pa. St. 43, 70 Atl. 904, and *Aurora v. Elgin, A. & S. T. Co.* 227 Ill. 485, 81 N. E. 544, 118 Am. St. Rep. 284, invalid. It confers no right upon either party thereto to use or aid in using the tracks of the street railway company on Wells street for the transportation of interurban cars or for doing anything other than a street railway business. The interurban travelers, like other passengers, must seek their various destina-

tions in the city of Milwaukee as passengers alighting from the termini or stations of steam railroads do by the usual conveniences, and this can be considered no public inconvenience.

Another cognate difficulty in the way of awarding compensation in lieu of an injunction is inherent in the situation presented. In order to apply this rule it is necessary that all damages to accrue to the plaintiffs from the perpetual operation of the interurban cars on the street in front of their premises be ascertained and fixed, and upon payment of this sum the defendants have the corresponding right purchased by such payment. Any other disposition of the case must result in merely the ascertainment of past damages up to the time of trial, and throws the plaintiffs back upon the necessity of bringing numerous actions to recover for the subsequent damages as fast as they accrue—the very thing they were allowed to come into equity to avoid. But the assessment of all damages to accrue from the perpetual operation of the interurban cars, and requiring their payment in lieu of an injunction, would be in legal effect to authorize, as against the plaintiffs, the operation of interurban cars upon this street without consent of the lawfully constituted authorities, but with consent of the court. This cannot lawfully be done.

*By the Court.*—Judgment affirmed.