# INTERNATIONAL LUMBER COMPANY and Another v. AMERICAN SUBURBS COMPANY and Others.[1]

### July 26, 1912.

### Nos. 17,633—(206).

**Street railway — findings sustained by evidence.**

The findings of the trial court to the effect that plaintiffs would suffer a special injury, different in kind from that suffered by the general public, by the construction of defendants' line of railroad along and upon the public street and highway fronting their property *held* sustained by the evidence.

**Street railway — acceptance of grant to construct line.**

Where the local municipal authorities grant to a street railway corporation the right to construct and operate a line of railroad upon and along the public streets of the municipality, conditioned upon the filing by the company of a written acceptance of the grant within a specified time, a compliance with the condition as to acceptance is essential to the vesting of the grant; and the grant will lapse and cease if the condition be not complied with.

**Findings sustained by the evidence.**

The findings of the court in this case, that defendants failed to file the necessary acceptance, *held* sustained by the evidence.

**Powers of corporation — enlargement by municipal board.**

Corporations, whether public or private, are creatures of the state, deriving their power from statutes providing for their organization; and it is beyond the authority of a local municipal board or council to enlarge the same by attempting to confer upon the corporation powers not possessed by its charter or articles of incorporation.

**Private corporation — construction of railway.**

Power and authority to construct and operate a street railroad cannot be conferred by such local municipal board or council upon a private corporation organized for the purpose of dealing in real estate.

[1] Reported in 137 N. W. 395.

---

Note.—As to power of municipality, in absence of express legislative authority, to grant franchise for street railway, see note in 22 L.R.A.(N.S.) 925.

As to right of abutting owner to damages for special injuries where street railway is not considered an additional burden, see note in 25 L.R.A.(N.S.) 1265.

**Action to enjoin nuisance.**

>    Abutting property owners suffering a special injury from obstructions or
> nuisances in the street fronting their property, distinct from that suffered
> by the general public, may maintain an action for an injunction restraining
> the nuisance.

**Action by abutting owner.**

>    If the nuisance be placed in the street by a corporation, the property
> owner so offended may challenge the authority of the corporation in the
> premises, and its right to exercise a street car franchise.

Action in the district court for Koochiching county by the International Lumber Company and the Koochiching Company to enjoin the American Suburbs Company and the American Tramways Company, and others, from in any manner interfering with the soil of plaintiffs' lands and particularly that on Fourth street, and the extension thereof, in International Falls, and from laying rails on the land and highway. The case was tried before Stanton, J., who, when plaintiffs rested, denied defendants' motion to dismiss the action, and at the conclusion of the trial made findings and ordered judgment in favor of plaintiffs. From the judgment entered pursuant to the findings and from an order denying their motion for a new trial, defendants appealed. Affirmed.

*Richard & Coe* and *W. V. Kane,* for appellants.

*C. J. Rockwood,* for respondents.

BROWN, J.

Action to restrain and enjoin the construction of a line of street railroad upon and along one of the streets of International Falls, and upon a public highway leading from said street to the village of Ranier. Plaintiffs had judgment, and defendants appealed therefrom, and also from an order denying a new trial.

The complaint alleges that plaintiffs are the owners and in possession of certain described real property fronting upon the street and highway in question; that they have constructed a large sawmill thereon, and are about to set the same in operation; that they have expended, in the construction and equipment of the mill, a sum exceeding $75,000; and that the premises in question have been pre-

pared solely for the operation of this plant.  The complaint further alleges that the street in question furnishes the only means of access to the mill; and that the construction of the railroad track therein will substantially and greatly impair the usefulness of the mill and the operation thereof.  It also alleges that the threatened acts of defendants are wrongful and unlawful; that they are without authority to enter upon the street or highway, for the purpose of constructing therein their railroad tracks; and the prayer is that they be restrained from so doing.

Defendants answered, alleging in justification of their asserted right to construct car tracks in the said street, certain ordinances and resolutions enacted and adopted by the municipalities having the control and authority of the street and highway, by which the right to lay the car tracks upon the same was granted.  Plaintiffs, in reply, denied the validity of these enactments, and enlarged upon and made more specific the allegations of the complaint in reference to the alleged special injury to plaintiffs.

Upon the issues thus framed, the cause proceeded to trial, at the conclusion of which the court made full and complete findings of fact and conclusions of law, directing judgment for plaintiffs for the relief demanded in the complaint.

The principal contentions in support of the appeal are (1) that the complaint fails to state facts sufficient to constitute a cause of action; and (2) that the evidence wholly fails to show in plaintiffs a right to the relief demanded.

1. No objection to the complaint was made in the court below, and it is urged for the first time in this court.  The pleading was not demurred to, nor objection made at the trial which called in question the sufficiency of its allegations.  The rule controlling a situation of this kind is well settled by our decisions.  An objection to the sufficiency of a pleading, made for the first time in this court, will be overruled if, by any fair construction or intendment, a cause of action or defense may be spelled out of the allegations.  2 Dunnell, Minn. Digest, § 7726.

The precise objection is that the complaint fails to allege facts showing any special injury or damage to plaintiffs, different in kind

from that suffered by the public at large, invoking the general rule that a private action will not lie for an obstruction of a public street, however wrongful or unlawful, unless the complaining party shows some special injury, not common to the general public. It must be conceded that the complaint is not as complete in this respect as the facts disclosed by the record would have warranted, and a seasonable objection thereto would probably have been sustained. But in respect to this feature of the case the complaint is enlarged and the allegations thereof fortified by the allegations of the reply, and, construed together, we find the essential fact, namely, plaintiffs' special injury, sufficiently alleged. We do not stop to consider to what extent the allegations of the complaint may be aided and fortified in a reply; there being no departure from the cause of action pleaded in the complaint. John H. Bishop & Co. v. Travis, 51 Minn. 183, 53 N. W. 461; 2 Dunnell, Minn. Dig. § 7629. No objection was made to the reply in the case at bar; and the trial below proceeded on the theory that proper and sufficient allegations were contained in the pleadings. The objections now made must therefore be overruled.

2. Defendants' proposed line of railroad extends from within the city of International Falls to the village of Ranier, a distance of three or four miles, to be constructed upon a highway as it extends across section 35, in which, and abutting upon the highway, plaintiffs own certain lands. The trial court found that the construction of the road, not only upon the street of the city, but upon the highway across section 35, beyond the city limits, would specially and peculiarly affect plaintiffs in the enjoyment of their property, and of these findings defendants complain as not supported by the evidence.

It appears that the street in question has been graded and graveled in the center to a width of twelve feet; that from this graveled way the street slopes to the gutters on each side, and, because of the nature of the soil, the street is, in times of wet weather, impassable for loaded teams outside the graveled way. It further appears that plaintiffs, to reach the market with their products, will be required to make almost constant use of the street with heavily loaded vehicles. Defendants propose to take exclusive possession of the graveled way, leaving plaintiffs to drive over and across their tracks, or upon the

sloping sides of the street. The trial court found, in this connection, as follows:

"It will not be practicable to haul such loads along or across the defendants' tracks in the condition in which the defendants intend to maintain them; and the existence of the defendants' tracks in [said street] * * * will cause a great and actual damage to the plaintiff's mill and property, and will cause plaintiff, International Lumber Company, a great and actual injury and damage in the operation of its sawmill and the conduct of its business connected therewith."

The court also found, with reference to the construction of the railroad upon the highway over section 35, as follows:

"The defendants, prior to the commencement of this action, began grading for its tracks across section 35, between the graded roadway and the ditch on the south side thereof above described, and intend to place a railroad track upon said grade, constructed of ordinary ties about eight feet in length, and place T rails thereon about three and one-half inches high, and ballast with gravel between and under the ties, in the usual and ordinary manner of railroad construction. When completed, the earth embankments between the ties will be at some points a foot or so below the center of the graded highway; at other points a foot or so higher than the center of the graded highway. The defendants have placed at a number of points shallow drainage across their grading leading to the ditch; but the relative levels of the public highway and of the defendants' embankment and the manner of construction are such that the drainage of the public road will be seriously impaired and the road seriously damaged, and the plaintiffs' access to its lands seriously interfered with and obstructed."

Aside from the point urged by counsel for plaintiffs, that the construction of the railroad upon the highway would constitute an additional servitude, entitling plaintiffs to an injunction until their compensation is ascertained and paid, we hold that a special injury is sufficiently shown by the findings to entitle them to the relief granted, and we have only to determine whether the findings are sustained by the evidence. The suggestion of counsel for defendants

that the findings are mere conclusions of law, and not matters of fact, is without force. The findings, though expressed in the abstract, are nevertheless conclusions of fact and not of law.

We have examined the record with care, and find therein sufficient competent evidence tending reasonably to the conclusion that the acts of defendants, of which complaint is made, will, if consummated, specially affect plaintiffs in their rights of property and access thereto in a manner different from the injury to the general public, and therefore sustain the findings. A discussion of the evidence would serve no useful purpose. The substance thereof is expressed in the findings.

The case is brought within the rule laid down in Aldrich v. Wetmore, 52 Minn. 164, 53 N. W. 1072. It appeared in that case that plaintiff owned and operated a barber shop on the ground floor of his building, fronting on a public street in the city of Minneapolis. The defendant owned the adjoining lot, and in the improvement of his property took up the sidewalk in front of it, and excavated a cellar on his lot and under the sidewalk, throwing the earth and material into the street in front of both his lot and plaintiff's shop, thereby obstructing travel upon the sidewalk and impairing access to plaintiff's property. The action was for damages resulting from the nuisance, and the court held that it could be maintained; that it was not necessary to the maintenance of a private action for obstructing a public street that all access to plaintiff's property be cut off; and that it is sufficient, in such a case, that the use of adjacent property is substantially and materially impaired. The rule there laid down has been followed and applied in subsequent cases. Fitzer v. St. Paul City Ry. Co. 105 Minn. 221, 117 N. W. 434, 18 L.R.A. (N.S.) 268, 127 Am. St. 557; Hruska v. Minneapolis & St. L. R. Co. 107 Minn. 98, 119 N. W. 491. See also Birmingham v. Moran, 151 Ala. 187, 44 South. 152, 125 Am. St. 21; Long v. Wilson, 119 Iowa, 267, 93 N. W. 282, 60 L.R.A. 720, 97 Am. St. 315; State v. Godwin, 145 N. C. 461, 59 S. E. 132, 122 Am. St. 467; Smith v. Mitchell, 21 Wash. 536, 58 Pac. 667, 75 Am. St. 858; Cushing-Wetmore v. Gray, 152 Cal. 118, 92 Pac. 70, 125 Am. St. 47; 11 An. Cas. 287, note; Schuster v. Milwaukee, 142 Wis. 578, 126 N. W. 26. The

facts presented in Guilford v. Minneapolis & St. L. R. Co. 94 Minn. 108, 102 N. W. 365, and in other cases cited by defendants are essentially different from those here presented, and they are not in point. Plaintiffs' injury is of a special and peculiar nature, distinct from that suffered by the public at large—a fact not appearing in those cases.

The mere fact, however, that plaintiffs are specially damaged is not alone sufficient to sustain their right to an injunction. It must further appear that defendants are without authority to lay their railroad in the street and highway in question. If defendants have been legally and properly vested with this authority, then plaintiffs are not entitled to an injunction, though they might have an action for damages. We come, then, to that question.

3. Defendant American Tramways Company is a street railway corporation, organized and existing under the laws of the state of South Dakota. Defendant American Suburbs Company is a corporation, organized under the laws of this state for the purpose of dealing in real estate. The authority relied upon as vesting in the Tramways Company the right to lay its car tracks upon the street in question, within the corporate limits of the city of International Falls, is founded in an ordinance of the village council, predecessor of the city, by which the right was granted to that company, upon the terms and conditions therein prescribed. The line of road to be constructed by that company connects with the line to be constructed by the Suburbs Company at a point within the city; and the authority of the Suburbs Company is based upon an ordinance of the village and certain resolutions of the board of supervisors of the town through which the road extends, and the board of county commissioners. The Tramways Company claims no rights beyond the boundaries of the municipality, and the Suburbs Company claims no rights within the same, save to a limited extent, namely, from the station building of the Minnesota & International Railroad Company, as the same is located adjacent to the street in question. We dispose of the question of the rights of the companies separately.

4. The ordinance of the village council, granting the right to the Tramways Company to occupy this street and other streets of the

village, expressly granted the right upon certain specified conditions, one of which was that the company should, within sixty days after the passage of the ordinance, file with the village recorder an acceptance thereof, signed by the president and secretary of the company; and that the grant should not become operative, or vest in the company any rights or privileges whatsoever, unless so accepted. The trial court found that the grant was not accepted by the company; and, therefore that it never took effect. If this finding is sustained, it is necessarily fatal to the asserted grant now insisted upon by defendants. The ordinance imposed numerous conditions upon the company, and reserved in the village council certain rights of control in the matter of the operation of the road when constructed, an assent to which by the company was essential to the creation of the privilege and franchise thereby intended to be granted. In other words, the ordinance amounted to nothing more than a proposal, and no vested rights were granted the company until acceptance, until the contract was completed in the manner by the ordinance provided, until which time it remained without force or effect, except as an offer to grant the use of the streets of the village, provided the company consented in writing to the conditions imposed. That formal acceptance or waiver thereof was necessary to the consummation of the transaction is clear under the authorities. Joyce, Franchises, § 348.

Counsel for defendants insist, however, that a proper acceptance of the ordinance was duly signed and filed as thereby required; and that the trial court erred in finding to the contrary. If it be conceded that the question whether the findings of the court are sustained by the evidence on this subject is before the court by proper assignment of error, we have only to add that an examination of the record does not bring to light evidence of a character to justify the conclusion that the findings are clearly and palpably against the evidence. The evidence fairly shows that an acceptance was prepared and signed soon after the passage of the ordinance; but it does not show that the document found permanent lodgment in the city clerk's office until some time in July, 1910, over a year after the ordinance was passed, and a few days prior to the trial of the action. The

city recorder testified that a paper, which, at the time of the trial, he thought was an acceptance of the ordinance, was handed to him for filing soon after the ordinance was passed, and which he subsequently returned to the secretary of the Tramways Company; but he was unable to say that the document on file at the time of the trial was the same paper. He could not identify it as the same; and, so far as the record before us shows, the paper on file in July bears no marks, by indorsement or otherwise, that it had previously been on file in the recorder's office. The evidence is too uncertain to justify us in overturning the findings upon this question, and we sustain them. It follows that, since the Tramways Company failed to accept the ordinance within the time fixed therefor, the ordinance lapsed, became inoperative, and the Tramways Company can predicate no rights thereunder. In view of this conclusion, we pass, without consideration, several other objections to the validity of the ordinance, the determination of which is unnecessary to a decision of the case.

The point made in defendants' brief, that the acceptance was waived by the subsequent acquiescence of the public authorities, is not presented by the record, and is not considered. The court made no findings upon the question; nor was there any request for additional findings covering the point. The question is not, therefore, before us upon this record.

5. The Suburbs Company was organized as a real estate corporation. Its articles of incorporation recite that "the general nature of its business shall be buying, selling, owning, leasing, erecting, constructing, repairing, and maintaining of buildings of all kinds and character as owner, agent, or otherwise; the buying, selling, leasing, owning, and controlling of mortgages and other securities * * * the organizing and operating of such enterprises as may be necessary in the development of said properties and the doing of all acts incidental thereto; * * * and furthermore to transact all other lawful business."

The contention of plaintiffs is that, since the Suburbs Company was and is a purely private corporation, organized and created for a specific private purpose, it could not lawfully be clothed with a

public franchise of the nature of that here involved; and that the ordinance of the village and the resolutions of the town and county boards were wholly ineffectual. We sustain this contention.

It may be conceded, for the purposes of the case, that a franchise to construct and operate a street railroad, granted by a municipal corporation, is not necessarily a corporate franchise, and that it may lawfully be granted to either an individual or a corporation. It is not essential to the existence of a corporation, but is a power conferred subsequent to its creation. Joyce, Franchises, § 30. Although our statutes provide that the right to construct street railways upon the public streets or highways may be granted by local authorities, including the town and county boards, to persons or corporations (sections 434, subd. 11, and 745, R. L. 1905), it is clear that, when granted to a corporation, the corporation must of necessity be one capable of its acceptance, and one which it may exercise under its charter powers. It is elementary that corporations can exercise no power or authority except such as is expressly conferred upon them by law or by their articles of association, and such as are incidental to the exercise of the powers expressly granted. When a corporation exceeds these limits, its acts are wholly ultra vires, and subjects its charter to forfeiture at the suit of the state. Suburbs Company had no authority, under its articles of incorporation, to enter upon the business of operating railroads; and it is obvious that local municipal councils and boards could not lawfully confer that power upon it.

The creation of corporations rests with the state, and the authority conferred by statute upon municipalities to grant to street railroad corporations the right to use the public streets must be confined to corporations authorized to engage in such an enterprise. The authority of the Suburbs Company cannot be enlarged by intendment, and the general clause of its articles of association, authorizing the transaction of any lawful business, must be limited to such matters and transactions as have some relation to the general business of the company. The powers of the company could not be enlarged by the local authorities. Nellis, Street Railways, § 10; Oregon Ry. & Nav. Co. v. Oregonian Ry. Co. 130 U. S. 1, 9 Sup. Ct. 409, 32 L.

ed. 837; Farrell v. Winchester, 61 Conn. 127, 23 Atl. 757. If the franchise may lawfully be granted to a private real estate corporation, it might, with equal propriety, be granted to a life or fire insurance company, or to a religious or banking corporation. Clearly the legislature never so intended. It follows that, since the legislature has not authorized the grant of such power to the private corporation, organized for a specific private purpose, the attempt of the local authorities to vest the Suburbs Company with the power was a nullity. We so hold.

This covers all that is necessary to a decision of the case. We have considered all the assignments, and discover no sufficient reason for reversing the order denying a new trial.

Judgment affirmed.