Reported in 204 N.W. 534, 205 N.W. 613.
The owners of the land embraced in the plat of the townsite of the village of Hibbing, commonly known as the north forty, applied to the district court of St. Louis county for the vacation of the plat. The application was granted and property owners in Pillsbury and Southern additions, which lie south of and adjacent to the plat vacated, have appealed from the judgment and from an order denying their motion to set it aside and dismiss the proceeding for want of jurisdiction.
For a statement of many of the pertinent facts, we refer to Reed v. Village of Hibbing, 150 Minn. 130, 184 N.W. 842. *Page 442 
The briefs cover nearly 600 pages and the discussion has taken a wide range. Out of it all, three points emerge, which go to the heart of the case, viz: Did the court have jurisdiction to act upon the application? Was the court justified in granting the application? Can the appellants recover damages?
1. The statute (G.S. 1913 § 6863), authorizes the district court to vacate all or any part of a plat upon the application of an owner of land included in the plat, and to adjudge the title to all streets, alleys and public grounds to be in the persons entitled thereto, but the court may not vacate a street or alley dedicated to the public use in or by the plat of any city, town or village organized under a charter or special law which provides a method or procedure for the vacation of streets and public grounds by the municipal authorities.
The trial court found that Hibbing was not organized under a charter or special law containing such a provision and held that the court had jurisdiction. The question was raised at four different stages of the proceeding. On each occasion the court ruled against appellants, and these rulings are assigned as error.
Hibbing was organized as a village in 1893 under chapter 145, p. 148, L. 1885, which provides, in section 29, that "upon the petition in writing of all the owners of lots or land on any street or alley in such village, and not otherwise, the board of trustees may discontinue such street or alley or any part thereof." Appellants contend that chapter 145 is the charter of the village and, since it provides for the discontinuance of streets by the village authorities, the court was without jurisdiction.
The court's jurisdiction was first limited by chapter 503, p. 635, L. 1909. From an early date jurisdiction had been conferred in broad terms, sections 12, 13, 14, chapter 29, G.S. 1866; and in 1904 in Townsend v. Underwood's Add. 91 Minn. 242,97 N.W. 977, it had been held that the power to vacate a plat included the power to vacate the streets within the plat.
The 1909 act restricted the power, but did not entirely withdraw it from the court. If appellants' counsel correctly construe the act, not much is left of the power, for few special acts or home rule charters do not contain some provision for the vacation of streets *Page 443 
by the municipal authorities. In support of their construction they cite Balch v. St. Anthony Park West, 129 Minn. 305,152 N.W. 643. That case holds that the 1909 act withdrew the vacation of streets from the jurisdiction of the district court in municipalities coming within the scope of the act; that the charter of St. Paul, a home rule charter, provided a method for the vacation of streets by the city authorities, hence the court could not vacate a street included in the plat vacated, but the meaning of the word "charter," as used in the act, was not considered.
The argument that every municipal corporation which has a home rule charter is organized under a special law goes too far. In a sense such a charter is a special law applicable to the municipality adopting it, but, if "charter" and "special law" have the same meaning, the legislature spoke at random, an inference not to be lightly drawn. If every home rule charter is a special law and every general law under which a municipal corporation is organized is the charter of the municipality, the legislative intent would have been better expressed by omitting the words "charter or special." The first word is often used to signify the entire body of existing laws which provide for the organization and government of a particular city or village, but, since the adoption of section 36, art. 4, of the state Constitution, the word is commonly used as a synonym for "home rule charter" and, in construing the 1909 act, the attorney general gave it as his opinion that this is what the word referred to. Opinion No. 137, given in 1920 to the city attorney of Thief River Falls.
The district court came to the conclusion that this was the correct construction of the act for reasons tersely stated by Judge Dancer. He called attention to the fact that municipalities in this state have been organized in one of three ways: (1) By the adoption of home rule charters; (2) under special laws; and (3) under general laws. He thought the legislature intended the 1909 act to apply to municipal corporations organized in either the first or second way, and intended to leave the original statute in effect as to those organized in the third way, because any other construction would make the words "special law" superfluous and meaningless. Referring *Page 444 
to section 29, chapter 145, he said it did not permit the village authorities to vacate a street unless every owner of abutting property signed the petition, hence, if one property owner arbitrarily refused to sign, the hands of the authorities were tied and there could be no vacation, however great the need might be, a result which could hardly have been intended by the legislature.
We think the district court interpreted the statute correctly, and hold that the court had jurisdiction.
2. The next contention is that section 6863 is invalid because it delegates legislative power to the courts in contravention of article 3 of the state Constitution. If this be true, a belated discovery has been made. The statute has been in existence as long as the state. Many plats have been vacated under it. Valuable buildings have been erected on land once occupied by streets or alleys. It would be an unexpected blow to the fancied security of titles if, after all these years, this court should hold that the statute is unconstitutional and all proceedings under it void. So far as we know, no question as to its constitutionality has been raised in previous cases, and we might brush aside the contention by saying that to sustain it would disturb too many titles, but it is made with such earnestness that we will inquire into its merits.
The courts have frequently considered the constitutional provision for the division of the powers of the government into three distinct departments. Gradually the necessity of avoiding a narrow construction has been perceived, for it has proved to be impractical to view the provision from the standpoint of a doctrinaire. This and much more is well put in State v. Crosby,92 Minn. 176, 99 N.W. 636, and in State v. Bates, 96 Minn. 110,104 N.W. 709, 113 Am. St. 612. This court has upheld the statute authorizing the district court to establish judicial highways, In re Highway, Fillmore and Houston Counties, 158 Minn. 302,197 N.W. 741, Alexander v. McInnis, 129 Minn. 165, 151 N.W. 899; the judicial drainage statute, State v. Crosby, supra; and the so-called Flood Control Act, which vests jurisdiction in the district court, State v. Flaherty, 140 Minn. 19, 167 N.W. 122. Section 6863 is no more open to attack upon constitutional grounds than the statutes considered in the cases cited. *Page 445 
In several states jurisdiction to vacate public highways is directly conferred upon the courts. Sometimes the jurisdiction is exclusive and sometimes concurrent with the jurisdiction of local boards, but the constitutionality of such statutes seems not to have been questioned. Swanson Street, 163 Pa. St. 323, 30 A. 207; Detroit Real Est. Inv. Co. v. Frazer, 137 Mich. 108,100 N.W. 271; Hughes v. Beggs, 114 Ind. 427, 16 N.E. 817; Bradbury v. Walton, 94 Ky. 163, 21 S.W. 869; In re Big Hollow Road,111 Mo. 326, 19 S.W. 947; Latimer v. Tillamook County, 22 Or. 291,29 P. 734.
The primary object of section 6863 is to provide for the vacation of plats and the determination of the title to the land in the streets. In Townsend v. Underwood's Add. supra, it was said that authority to do this could not be conferred on a city council. This is self evident, for only a court can adjudge the title to land to be in a certain person.
Petition of Hayes, 139 Wis. 163, 120 N.W. 834, deals with a statute substantially the same as ours. The statute was examined and a distinction drawn between a proceeding to vacate a plat and one to vacate a highway, a distinction suggested in Balch v. St. Anthony Park West, supra.
It would be a technical application of article 3 to hold that the legislature must divide jurisdiction between the courts and the municipal authorities in matters such as this, by limiting the power of the court to the vacation of the plat and the adjudication of the title to the streets, and that of the local authorities to the vacation of the streets.
Appellants greatly rely on State v. Simons, 32 Minn. 540,21 N.W. 750, and Brenke v. Borough of Belle Plaine, 105 Minn. 84,117 N.W. 157. The first case had to do with a statute conferring power upon the district court to incorporate villages, and the second dealt with a statute authorizing the court to detach agricultural lands from cities. There can be no doubt about the general principles enunciated, but these statutes are not of the same character as one providing for the vacation of a plat. Our conclusion is that the statute is constitutional and that the district court had jurisdiction to vacate the streets within the plat of the north forty. *Page 446 
3. The findings pertinent to the second question are as follows: The petitioners own all the land in the north forty. Underlying the surface at a considerable depth is a deposit of iron ore, estimated at 20 million tons. The only practicable method of mining the ore is to remove the overburden. There are mining pits on three sides of the north forty and the slopes on the sides of the forty contain an additional 13 million tons of ore. This ore cannot be removed unless the plat is vacated. There are no buildings on the north forty; those once there have been removed or torn down.
There is but one highway leading directly to the north. It crosses the forty and is carried over the pits on a steel viaduct. The vacation of the plat will cut off communication over this highway. All the other northerly routes are more circuitous and inconvenient than the route across the viaduct, but highway communication will not be otherwise materially interfered with by the vacation of the plat. Mining is the predominant industry in Hibbing. The prosperity of the village largely depends upon it. The mining of the ore set free will give employment for a long time to a large number of men who reside in Hibbing or nearby. The public revenue derived from the taxation of mineral lands and property devoted to mining operations has been and, until the ore bodies are exhausted, will continue to be enormous. The mining companies for years have paid and are still paying the major portion of all taxes levied for municipal purposes. It is to the advantage and interest of the inhabitants of the village, of the public generally, and of the state and nation, that the ore in the forty and the adjacent slopes be mined and removed. There is no practicable way of preserving highway communication over the forty and the viaduct leading to the north country. If it could be preserved, there would be slight, if any, advantage to the public. It is for the best interests of Hibbing, its inhabitants and the public at large, to vacate the plat and the streets and alleys in question.
These findings are attacked as contrary to the evidence, the specific contention being that the vacation of the plat will promote the interest of the mining companies, but not the public interests. *Page 447 
A petition for the vacation of a street calls for the exercise of the discretion of the court or body authorized to act upon it. An appellate court has no right to overturn the decision of the tribunal which had jurisdiction to act, unless the decision was arbitrary or the result of an abuse of discretion. Fowler v. Vandal, 84 Minn. 392, 87 N.W. 1021; Steenerson v. Fontaine,106 Minn. 225, 119 N.W. 400.
The viaduct and First avenue, which leads to it from the south, have been much used for public travel, but the extent of the use of a public way is not the sole test of the propriety of vacating it. The final test is whether the public interests will or will not be best served by discontinuing the way. No one is here contending that a highway can be discontinued in order to promote private interests.
The vacation of a street has several consequences. It relieves the municipality of the expense of maintaining the street and frees it from liability for damages for a failure to keep the street in repair. It releases the estates of abutting landowners from the public easement in the land between the street lines. In greater or less degree it may cause damage to other landowners by diverting travel to other streets, thus diminishing the value of property used for business purposes in the neighborhood of the vacated street. It may cause inconvenience to all persons who live in the vicinity by compelling them to travel over streets less direct and not so well kept. It may incommode the general public. Whether the question is presented to a legislative or administrative body, or to a court, the ultimate consideration is one of public expediency. Private interests are behind many applications to discontinue public highways. In the present case the fact that the mining companies have a selfish interest to serve should have no weight one way or the other, for highways can only be established, altered or discontinued for the public good. Cram v. City of Laconia, 71 N.H. 41, 51 A. 635,57 L.R.A. 282; Elliott (3d ed.) Rds. Streets, § 1183.
Of course public interest and public use are not synonymous terms. This court struggled with the question of what is a public use in State v. Houghton, 144 Minn. 1, 174 N.W. 885,176 N.W. 159, 8 A.L.R. 585. That question is not here again, for we are now concerned with an inquiry as to the public interest; that is, *Page 448 
whether, in the exercise of the police power of the state, the court was justified in permanently depriving the public of the use of a portion of this highway. For this reason, the contention that the test of the power to discontinue a public highway and of the power to condemn land for use as a public highway is the same, cannot be sustained. So far as the public is concerned, the discontinuance of a highway is the giving up not the taking of land. The inquiry is whether it is for the interest of the public to relinquish its easement in the land. G.S. 1913, § 1281. Whether we think of the public as all the people, or as the people who live in Hibbing, the question is: Will their interests be promoted by the vacation of the plat and streets? In view of the facts found by the trial court, it would seem that there is little room for argument on this point. To keep the ore locked in the ground for all time to come, in order to make highway communication between Hibbing and the country to the north more direct and convenient, would be a short-sighted policy. It is a matter of common knowledge that mining is the one industry upon which the prosperity of Hibbing depends. But for it, the trade of the merchants and the earnings of the workmen would dwindle to a small fraction of what they are when the mines are in operation. In a measurable degree the revenues and prosperity of the state are affected by the extent to which mining is carried on. We see no reason why these considerations should not have influenced the trial court in concluding that the public benefits will outweigh the public inconvenience caused by the vacation of the streets upon the north forty. The substance of all this is aptly stated in Reed v. Village of Hibbing, supra, and in the memorandum of Judge Cant appended to his findings, and without further comment we hold that the finding in question is supported by the evidence.
4. It would seem that Reed v. Village of Hibbing, supra, disposes of appellants' claim to damages at common law, but the briefs discuss the question at great length and, in deference to the earnest effort of appellants' counsel to demonstate that the views expressed in the Reed case are unsound, we have concluded to reexamine the question. *Page 449 
The principle that a private action for damages for the obstruction of a public way cannot be maintained by one whose injury is not different in kind from that suffered by the general public, though greater in degree, is generally recognized. The principle was approved nearly 50 years ago in Shaubut v. St. Paul S.C.R. Co. 21 Minn. 502, and has not been questioned in the subsequent decisions. In the application of the principle, distinctions have been drawn which lead to differences of opinion between counsel in the present case. Without reviewing the cases, it is safe to say that this much has been settled: The owner of property abutting on a public highway has a special interest in the highway different from that of the general public. To recover damages for the obstruction or vacation of the highway, it is not essential that access to his property has been entirely cut off, but he cannot recover if his only complaint is that he is compelled to travel farther or over a poorer road in going to and from his property. The owner of land to which a public highway extends and one whose land does not come in contact with the highway occupy different positions. If, by the discontinuance of a highway running across, along or to the land in question, it is left abutting upon a cul-de-sac, the owner is deemed to have suffered an injury not common to the public. The right to damages is not limited to owners of property fronting or abutting on the portion of the highway vacated; those whose access to their property has been cut off in one direction may be placed in a position where they become entitled to damages.
Some of the decisions upon which the foregoing propositions are based are Brakken v. M. St. L. Ry. Co. 29 Minn. 41,11 N.W. 124; Aldrich v. Wetmore, 52 Minn. 164, 53 N.W. 1072; Rochette v. C.M. St. P. Ry. Co. 32 Minn. 201, 20 N.W. 140; Shero v. Carey,35 Minn. 423, 29 N.W. 58; Gundlach v. Hamm, 62 Minn. 42,64 N.W. 50; Wendt v. Bd. of Supervis. 87 Minn. 403, 92 N.W. 404; International Lbr. Co. v. Am. Suburbs Co. 119 Minn. 77,137 N.W. 395; Vanderburgh v. City of Minneapolis, 98 Minn. 329,108 N.W. 480, 6 L.R.A. (N.S.) 741; Maletta v. Oliver Iron Min. Co.135 Minn. 175, 160 N.W. 771; Painter v. Gunderson, 123 Minn. 323,143 N.W. 910; Thorpe v. City of Ada, 137 Minn. 86, 162 N.W. 886. In none of them was the situation the same as it is here. *Page 450 
The north forty is in the form of a peninsula projecting into the surrounding mining pits and connected with the solid ground north of the pits by the viaduct. Travel across the forty and over the viaduct is permanently interrupted by the vacation of the plat. The inhabitants of Hibbing are more or less inconvenienced, the appellants more than those who live or do business farther south. Appellants own no land contiguous to the plat vacated or upon the vacated portion of First avenue. Between the north forty and the portion of Hibbing in which their property is located there is an east and west street extending through the plat and open for travel. They have access to their premises on all sides. The vacation of First avenue does not leave their property abutting upon a cul-de-sac. The burden of their complaint is that in going to or coming from the country north of the mining pits one must now go farther and over poorer roads, hence trade from the north will be diverted from their doors to South Hibbing and other trade centers more easily accessible. We are of the opinion that in these circumstances the common law does not give them a right to damages. This conclusion is compelled not only by our own decisions, but by the almost uniform current of authority in all the states. See 2 Elliott (3d ed.) Rds. Streets, § 1181; 1 Lewis, Em. Dom. (3d ed.) § 203; 13 R.C.L. pp. 73, 74. Nothing more need be said in justification of the conclusion reached in the Reed case as to the right to damages at common law.
5. Neither the Constitution nor the statute defines the word "damaged." If it means land injuriously affected, must the land be affected in a different way than land of other owners? Speaking of the constitutional amendment, in Stuhl v. G.N. Ry. Co. 136 Minn. 158, 161 N.W. 501, L.R.A. 1917D, 317, the court said:
"This does not mean that the amendment gives a right of recovery for acts which under general rules of law do not constitute actionable wrong. The purpose of the change is not to change the substantive law of damages or to enlarge the definition of that term. It was rather the purpose to make the law of damages uniform, so that a property owner may recover against persons or corporations *Page 451 
having power of eminent domain, under the same circumstances that would have authorized recovery against one not armed with that power."
As amended in 1896, section 13, art. 1 of the Constitution, declares that private property shall not be taken, destroyed or damaged for public use without just compensation, and the statute, section 6863, contains these words:
"The court shall hear all persons owning or occupying land that would be affected by the proposed vacation, and if, in the judgment of the court, the same would be damaged, the court may determine the amount of such damage and direct its payment by the applicant before the vacation or alteration shall take effect."
In substance, appellants contend that the Constitution and the statute have broadened the common law rule as to damages and that it is no longer necessary to prove special injury to the landowner to entitle him to damages for the vacation of a street.
The purpose of the constitutional amendment was to give a landowner the right to compensation if his land was damaged, even though there was no physical invasion or appropriation of the land. In particular, it was intended to give redress to one whose property was injured by changes in the grade of a street. Dickerman v. City of Duluth, 88 Minn. 288, 92 N.W. 1119. Merely as a member of the community, a landowner has no property in the streets in such a sense as to entitle him to compensation for any injury he may sustain as the result of the vacation of any street in the town where he lives. But, as the adjoining proprietor of land abutting on the portion of the street vacated, he may have a special or peculiar property right in the street, which may not be damaged unless compensation is made.
Have the appellants, as owners of land in North Hibbing, special property rights in the streets vacated as distinguished from the rights in the streets which they enjoy in common with the general public? If they have, they are entitled to compensation. Mr. Lewis, from whom appellants' counsel freely quote, says that the damages for which constitutions such as ours make provision are *Page 452 
those which could have been recovered at common law had the acts which caused them been done without statutory authority, and that the decisions are almost unanimously to the effect that, where a street is vacated one or more blocks away from the property of the landowner claiming damages and he has access in all directions to the system of streets, but must make a detour to reach certain points in the direction of the vacation, and this fact and the diversion of travel and loss of a thoroughfare depreciates the value of his property, there is no such taking or damaging of property as will entitle him to compensation. 1 Lewis (3d ed.) Em. Dom. pp. 370, 383, 391. It may be illogical to draw the line one or a dozen blocks from the property said to be damaged. There is a strong argument to that effect in Tilly v. Mitchell Lewis Co. 121 Wis. 1, 98 N.W. 969, 105, Am. St. 1007, but a line must be drawn somewhere. Statutes and decisions fixing arbitrary lines of division in matters of distance, time or value are so common as to need no mention. The nearer one's property is to the vacated portion of a street, the greater is the probability of an impairment of its value. It is all a matter of degree. It is hard to determine where public inconvenience ends and special injury begins, but the general consensus of opinion among courts and textwriters is correctly stated by Mr. Lewis.
It would seem that the word "damaged" is used in the same sense in the Constitution and in the statute. A statute containing a somewhat similar provision was considered in Rochette v. C.M. 
St. P. Ry. Co. supra. It provided that the commissioners in condemnation proceedings should determine the amount to be paid to each landowner as damages for taking or injuriously affecting his land. It was held that the statute did not change the rule that to entitle a landowner to compensation he must have sustained special damage to his property which, under the common law, would give him a private right of action.
Schuster v. Town of Lemond, 27 Minn. 253, 6 N.W. 802, is another case in point. There the statute gave the right of appeal from an order discontinuing a town road to any person aggrieved. It was held that only such persons as sustained special injury, *Page 453 
disadvantage or inconvenience not common to all the inhabitants or property owners of the town, could appeal.
We think the question is set at rest by our own decisions and that they are in line with the weight of authority in other jurisdictions. Cram v. City of Laconia, supra; German Luth. Church v. City of Baltimore, 123 Md. 142, 90 A. 983,52 L.R.A. (N.S.) 889, Ann. Cas. 1916C, 231; Penn. R. Co. v. Marchant, 119 Pa. St. 541, 13 A. 690, 4 Am. St. 659; Buhl v. Fort St. Union Depot Co. 98 Mich. 596, 57 N.W. 829, 23 L.R.A. 392; City of East St. Louis v. O'Flynn, 119 Ill. 200, 10 N.W. 395, 59 Am. Rep. 795; Stanwood v. City of Malden, 157 Mass. 17, 31 N.E. 702,16 L.R.A. 591; Austin v. Augusta Terminal Ry. Co. 108 Ga. 671, 34 S.E. 852,47 L.R.A. 755; Hyde v. Minn. D. P. Ry. Co. 29 S.D. 220,136 N.W. 92, 40 L.R.A. (N.S.) 48; In re West 151st St. 123 N.Y. Supp. 343; Enders v. Friday, 78 Neb. 510, 111 N.W. 140,15 Ann. Cas. 685; 1 Lewis (3d ed.) Em. Dom. p. 199.
Our conclusion is that neither the amendment to the Constitution nor the statute has enlarged the right to damages as defined by the common law, where there has been a lawful vacation of a street, and that there has been no taking or damaging of appellant's property within the meaning of either the Constitution or the statute.
6. The contention that to deny damages to appellants is to deprive them of their property without due process of law cannot be sustained. They have no property in the plat or streets vacated. The streets in question were dedicated to public use. The owners of lots abutting on these streets acquired rights in the streets by virtue of the dedication, which were not acquired by those who did not purchase from the proprietor of the plat, but the appellants do not come within that class.
In Meyer v. Richmond, 172 U.S. 82, 19 Sup. Ct. 106,43 L. ed. 374, it was urged that the use of a street once dedicated to the public may not be interrupted and the street diverted to a private use without compensation to those who, in reliance upon the continuance of the street, acquired private rights which were injured by its obstruction. The court said the substantial thing is not that *Page 454 
one may be damaged by an obstruction in a street, or specially damaged beyond others, but whether such damage is a deprivation of property within the meaning of the Federal Constitution; and it was held that consequential damage to property caused by the obstruction was not a deprivation of property within the meaning of the Fourteenth amendment. In that case the plaintiff's lot abutted upon the street obstructed and the obstruction was in the same block, a situation which in this state would make applicable the doctrine of the cul-de-sac cases.
In C.B. Q. Ry. Co. v. People, 200 U.S. 561, 26 Sup. Ct. 341,50 L. ed. 596, 4 Ann. Cas. 1175, it was said that if the injury complained of is only incidental to the legitimate exercise of governmental powers for the public good, there is no taking of property, and a right to compensation for such injury does not attach under the Constitution of the United States.
These cases are decisive and we accordingly hold that when, as here, a street is vacated to promote the interest of the public, any injury suffered by a landowner, not special or different in kind from that suffered by other members of the community, is not property within the meaning of the Fourteenth amendment.
Counsel have viewed the case from many standpoints and we have endeavored to follow the different lines of thought developed in their arguments. In the end we return to the three cardinal questions mentioned at the beginning of this opinion. The answers to them determine this appeal.
The judgment and order are affirmed.