**Edward J. COLLINS, d/b/a Ed Collins Lumber Company, Appellant,**

v.

**CITY OF SAN ANTONIO et al., Appellees.**

**No. 14665.**

Court of Civil Appeals of Texas.

San Antonio.

June 25, 1969.

Second Motion for Rehearing Denied

July 30, 1969.

Herbert Oliver, W. W. Palmer, San Antonio, for appellant.

Boyle, Wheeler, Gresham, Davis & Gregory, Jackson C. Hubbard, San Antonio, for appellees.

On Motion for Rehearing.

CADENA, Justice.

Appellant's motion for rehearing is overruled. However, the opinion previously filed herein is withdrawn and the following is substituted therefor:

Plaintiff, Edward J. Collins, appeals from a summary judgment denying him recovery for what he alleged constituted an unreasonable interference with access to his property in San Antonio, resulting from the construction of the Guadalupe Street overpass by defendant City of San Antonio. The other defendant, Missouri Pacific Railroad Company, participated in the construction of the overpass by granting to the City certain easements and by making monetary contributions, in accordance with an agreement between it and the City, to help defray the cost of erecting the overpass over its railroad tracks on Guadalupe Street.

As reflected by the accompanying diagram, plaintiff's property, on which he

operates a lumber business, is bounded by El Paso Street on the north, South Salado Street on the east, Guadalupe Street on the south, and, on the west, by a strip of land separating plaintiff's property from South Comal Street.

El Paso Street, which abuts plaintiff's property on the north, was, before the erection of the overpass, a two-way thoroughfare, carrying traffic east and west. The construction of the grade separation worked no change in the portion of El Paso Street on which plaintiff's property abuts, but, as a part of the grade separation plan, the street was closed at a point on the east line of South Salado Street.

South Comal Street, to the west of plaintiff's property, was not affected by the construction of the overpass. It still carries two-way traffic, north and south, as it did before.

According to plaintiff's affidavit in opposition to defendants' motion for summary judgment, that portion of South Salado Street which abuts plaintiff's property on the east, between Guadalupe Street and El Paso Street, is not open to traffic. Because of this, and the closing of El Paso Street at the east line of South Salado Street, eastbound traffic on El Paso Street must turn north upon reaching the South Salado Street intersection.

Prior to the construction of the overpass structure, Guadalupe Street was a heavily travelled artery, carrying both east and west-bound traffic. The overpass structure, including that on the portion of Guadalupe Street which is adjacent to plaintiff's land, was constructed above and entirely within the existing right-of-way of Guadalupe Street. No portion of plaintiff's property was taken for the project.

In its present condition, after completion of the overpass structure, Guadalupe Street at grade level immediately in front of plaintiff's land is entirely paved from the north curb line to the south curb line, a total width of approximately 45 feet. In the center part of the paved area at grade level,

immediately in front of plaintiff's property, are six concrete piers upon which are based the columns supporting the overpass structure. The minimum distance between these piers is 59.34 feet. Two unobstructed street grade traffic lanes, each twelve feet in width, are located on both the north and south sides of the piers. The traffic lane located between the piers and the north curb line of Guadalupe Street carries westbound traffic. The unobstructed traffic lane between the piers and the south curb line of the street carries eastbound traffic.

With reference to the present condition of Guadalupe Street, plaintiff's main complaints are that the location of the piers with reference to the existing driveways leading to and from plaintiff's land makes entry to and exit from such land less convenient than it was before the erection of the overpass, and makes it particularly difficult, if not impossible, for large trucks to leave or enter plaintiff's premises; that the bulk of the traffic which formerly used Guadalupe Street at grade level now uses the overpass structure; that plaintiff's customers must now travel a more circuitous route in going to and from plaintiff's lumber yard; that the presence of the overpass structure makes it difficult to see plaintiff's place of business, and that, because of these conditions, plaintiff's business has been adversely affected and his land has declined in value.

■ At the outset, we reject plaintiff's contentions that he is entitled to compensation because the change in Guadalupe Street has resulted in "circuity of travel" and diversion of traffic. As long as the abutting owner retains reasonable access to the public highway, he does not suffer compensable damage because the change in design or structure of the highway requires him and those dealing with him to use a more circuitous route in going to and from his premises. Wilson v. Iowa State Highway Comm., 249 Iowa 994, 90 N.W.2d 161 (1958); Cavanaugh v. Gerk, 313 Mo. 375, 280 S.W. 51 (1926); Lindley v. Oklahoma Turnpike Authority, 262 P.2d 159 (Okl.

1953). Although the right of access is constitutionally protected, the benefits of private ownership have been assured so long as there is reasonable access. The protection afforded to abutting owners "should not be extended to recognize a compensable damaging where a property owner has reasonable access to his property after construction of the public improvement." DuPuy v. City of Waco, 396 S.W.2d 103, 109 (Tex.Sup.1965).

■ Since no abutting owner has a vested interest in the traffic that passes in front of his property, diversion of such traffic by the construction, at another point, of a road which the public prefers to travel, does not result in compensable damage. Pennysavers Oil Co. v. State, 334 S.W.2d 546, 549 (Tex.Civ.App.—San Antonio 1960, writ ref'd); State Highway Commission v. Humphreys, 58 S.W.2d 144 (Tex.Civ.App.—San Antonio 1933, writ ref'd).

The record discloses that, while plaintiff still has access to Guadalupe Street, the construction of the overpass has made it more difficult to enter and leave plaintiff's property. According to the schematics and other exhibits which make up the summary judgment record, the existing points of ingress to, and egress from, plaintiff's premises via Guadalupe Street are near the points where such street intersects South Salado Street and South Comal Street. One of the concrete piers forming the foundation for the columns which support the overpass is located in the center of Guadalupe Street, apparently directly opposite an existing entrance on the western edge of plaintiff's property near South Comal Street. It appears that this driveway cannot be relocated farther west without placing it on land not owned by plaintiff. Moving the driveway to the east would require at least the partial demolition of an existing lumber shed. As far as the point of entry on the eastern portion of plaintiff's land, near South Salado Street, is concerned, there is nothing to indicate that its usefulness could not be increased by relocating it slightly to the east.

Defendants rely on Moorlane Company v. Highway Dept., 384 S.W.2d 415 (Tex.Civ. App.—Amarillo 1964, writ ref'd n. r. e.), where landowners were denied compensation although construction of an overpass resulted in diminishing the width of the street on which they abutted from forty-nine to twenty-six feet. In the course of its opinion, the Amarillo Court observed that the owners "still had access to their property and trucks could load and unload" at the owners' truck bay, "although the large trucks could not use this street in its entirety as had been used before the overpass was built * * *." In DuPuy v. City of Waco, 396 S.W.2d 103, 109 (1965), the Supreme Court tells us that the application for writ of error in Moorlane was refused, with the notation "no reversible error," because it was the view of the Supreme Court that "the property owners were left with reasonable access * * *."

The interference with plaintiff's access from Guadalupe Street appears to be greater than that which resulted from the construction of the improvement in Moorlane. However, the record reflects that vehicles emerging from plaintiff's property by means of the western driveway, near South Comal Street, can proceed in an easterly direction on Guadalupe Street by driving across the westbound lane, traversing the paved areas between the piers, which is open to traffic, and entering the eastbound lane. Vehicles exiting from such driveway can proceed west on Guadalupe Street, although it appears, and we assume, that large trucks attempting this maneuver because of the presence of the pier directly opposite this driveway and the fact that the westbound lane is only twelve feet wide, and that trucks proceeding west on Guadalupe Street would have difficulty in utilizing the western driveway for the purpose of entering plaintiff's premises.

Vehicles leaving plaintiff's property by means of the eastern driveway near South

Comal Street would have little or no difficulty in proceeding east on Guadalupe Street. However, because of the presence of a pier just west of this driveway, it appears that it would be very difficult for large trucks emerging from this driveway to turn right and proceed in a westerly direction. There is nothing to indicate the presence of any significant obstacle to the use of this driveway as a means of ingress to plaintiff's property.

The question of whether a landowner's right of access has been unreasonably impaired is, under the holding in DuPuy v. City of Waco, supra, a question of law. We hold that, as a matter of law, plaintiff still has reasonable access to his property from Guadalupe Street.

Even if we are mistaken in our holding concerning the reasonable nature of plaintiff's present access to Guadalupe Street, the record conclusively establishes that plaintiff's right of access to his property from El Paso Street, which abuts his land on the north, has not been impaired. The holdings in City of Houston v. Fox, 419 S.W.2d 819 (Tex.Sup.1967), and Archenhold Automobile Supply Co. v. City of Waco, 396 S.W.2d 111 (Tex.Sup.1965), clearly adopt the rule that one of two public streets on which a landowner abuts may be completely closed without compensating such owner if the remaining street "furnishes suitable means of access." 396 S.W.2d at 114. The contention that a landowner has the right of reasonable access to all streets on which he abuts had been previously rejected by the Supreme Court in City of San Antonio v. Pigeonhole Parking of Texas, Inc., 158 Tex. 318, 311 S.W.2d 218 (1958). See Note, 12 S.W.L.J. 522 (1958). As Mr. Justice Steakley pointed out in Archenhold, questions concerning the impairment of a landowner's rights of access should be considered in totality and "should not be fragmented" by considering what happened on each individual abutting street. 396 S.W.2d at 114.

The facts of this case make inapplicable the holding in DuPuy v. City of Waco, supra, a companion case to Archenhold. In DuPuy, the construction of the public improvement left the owner fronting on a street which had been transformed into a cul-de-sac, without direct access to any other public street.[1] DuPuy does no more than adopt the rule that a property owner whose land is left abutting a cul-de-sac suffers compensable damage. The nature of the DuPuy holding is revealed by the Supreme Court's reliance on the decision by the Minnesota Court in the case of In re Hull, 163 Minn. 439, 204 N.W. 534, 205 N.W. 613, 49 A.L.R. 320 (1925). See 396 S.W.2d at 110.

Plaintiff here has not been left in a cul-de-sac insofar as El Paso Street is concerned. A cul-de-sac is a street, closed at one end, which only communicates with a public street or road at the other end. 25 C.J.S., Cul de Sac, 27. Here, El Paso Street is open at both ends of the block on which plaintiff abuts. It communicates with South Comal Street on one end of the block and with South Salado Street on the other. The fact that westbound El Paso Street traffic, upon reaching the South Salado Street intersection, can proceed only in a northerly direction on South Salado Street does not create more than a situation resulting in noncompensable circuity of travel. If means of ingress and egress are not cut off or lessened in the block of the abutting owner, but only rendered less convenient because of the vacation of the street in another block, there is no right to compensation. Lee v. City of Stratford, 125 Tex. 179, 81 S.W.2d 1003 (1935).

In his brief, plaintiff asserts that El Paso Street furnishes no reasonable access,

---

1. In considering the question of whether or not DuPuy had reasonable access to his property from a public street, the Supreme Court gave no consideration to the existence of an alley running from Du-Puy's property to a public street. The question of whether an alley can be considered a reasonable means of access is not discussed.

as far as his lumber operation is concerned, because that portion of his land which abuts El Paso Street has been leased to third persons. However, the record in this case discloses that only a portion of plaintiff's frontage on El Paso Street is in the possession of tenants. There is no impediment to the use of the greater portion of such El Paso Street frontage by plaintiff.

■ Plaintiff, by his seventh point, assails the judgment below on the ground that twenty years prior to the filing of this suit defendant, Missouri Pacific Railroad Company, with the approval of the City of San Antonio, physically appropriated that portion of South Salado Street which adjoins plaintiff's property on the east by installing and maintaining thereon railroad tracks and other facilities. Plaintiff maintains that such actions deprived him of his property in that, as abutting owner, he owned the fee simple title to the center of South Salado Street. Nowhere in the record does it appear that this theory of recovery as against the railroad was urged in the trial court. The entire thrust of plaintiff's pleadings is that the damage to his property resulted from the construction of the overpass and the closing of portions of El Paso Street, when taken into consideration along with the fact that, because of its physical characteristics, South Salado Street, adjoining plaintiff's property, was closed to traffic and afforded plaintiff no access to his land. We overrule plaintiff's seventh point, without deciding the question of the state of the title to South Salado Street.

■ Plaintiff's point relating to the existence of a conspiracy between the railroad and the City is overruled. Defendants' affidavits, which are uncontroverted, establish that the sole purpose to be served by the Guadalupe Street Grade Separation Project was the elimination of a serious traffic problem resulting from the presence at grade, and constant use by the railroad, of railroad tracks on Guadalupe Street.

The judgment of the trial court is affirmed.